PAUL A. HILDING, ESQ.
State Bar No. 110656
JAMES H. PYLE, ESQ.
State Bar No. 224121
HILDING LAW FIRM
501 W. Broadway, Suite 1760
San Diego, California 92101
Tel:   (619) 233-4200
Fax:   (619) 233-4211

Attorneys for Plaintiff
ALL STAR SEED

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALL STAR SEED, a California corporation, | Case No. **'12CV0146 L   BLM** |
| Plaintiff, | **COMPLAINT FOR BREACH OF CONTRACT - DUTY TO INDEMNIFY; BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING** |
| v. | |
| NATIONWIDE AGRIBUSINESS INSURANCE COMPANY, an Iowa corporation, | |
| Defendant. | **DEMAND FOR JURY TRIAL** |

Plaintiff All Star Seed ("All Star") for its complaint against Defendant Nationwide Agribusiness Insurance Company ("Nationwide"), alleges as follows:

### NATURE OF ACTION

1.   This insurance coverage dispute arises out of Nationwide's refusal to indemnify All Star for substantial property losses resulting from three arson fires occurring in February and March of 2011 ("the fires") that destroyed hay worth several million dollars.

### JURISDICTION AND VENUE

2.   Plaintiff alleges on information and belief that this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1).  Plaintiff further alleges on information and belief that there is complete diversity of citizenship between Plaintiff and Defendant, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

3. Plaintiff alleges on information and belief that this Court has personal jurisdiction over Defendant inasmuch as Defendant, at all times relevant, repeatedly transacted insurance business in the State of California and within the geographical jurisdiction of the United States District Court for the Southern District of California.

4. Venue is proper pursuant to 28 U.S.C. § 1391(a)(1) because, on information and belief, the Defendant resides in this District and in the State of California.

5. In the alternative, venue is proper pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events giving rise to the claims at issue in this action, including the purchase of the insurance policy at issue, the fires giving rise to the losses at issue, and Defendant's breach of contract occurred in this District.

6. In the alternative, venue is proper pursuant to 28 U.S.C. § 1391(a)(3) because, on information and belief, at least one Defendant is subject to personal jurisdiction in this District.

**PARTIES**

7. At all times relevant hereto, Plaintiff All Star was a California corporation, with its principal place of business located in Imperial County, in the State of California.

8. Plaintiff is informed and believes, and thereon alleges that Defendant Nationwide is a corporation organized and existing under the laws of the state of Iowa, with its principal place of business located in Des Moines, Iowa.

9. Plaintiff further alleges on information and belief that Nationwide is an insurance company, transacting business in the State of California, and was at all relevant times transacting insurance in Imperial County, State of California.

**FACTUAL BACKGROUND**

A. **The Nationwide Policy**

10. Nationwide issued to All Star as the "named insured" a "Commercial Output Program" insurance policy, number COP117377A (the "Nationwide policy"), for the period of May 5, 2010 to May 5, 2011.

11. A true and correct copy of the Nationwide policy is attached hereto as Exhibit 1.

12. In the "PERILS COVERED" section, the Nationwide policy states "'We' cover

external risks of direct physical loss unless the loss is limited or caused by a peril that is excluded."

13. The fires constituted "external risks of direct physical loss" within the meaning of the Nationwide policy.

14. Fire caused by arson is not an excluded peril.

15. The Nationwide policy adds, via an endorsement for "Baled Hay In The Open Coverage" (the "Baled Hay endorsement"), explicit coverage for the stock of baled hay in All Star's storage yards, up to the specified limits.

16. The Baled Hay endorsement also contains a "Baled Hay Storage Distance Warranty," which states:

> IV. As it relates to this endorsement, the following is added to the OTHER CONDITIONS section for baled hay:
>
> **BALED HAY STORAGE DISTANCE WARRANTY**
>
> The insured agrees that the following conditions will be maintained for all baled hay:
>
> 1. **OPEN STORAGE**
>    a. "we" will not pay more than $150,000 per any one stack.
>    b. A minimum of 50 feet of clear space must be maintained between stacks and property lines or fences.
>    c. A minimum of 50 feet of clear space must be maintained between each stack.
>    d. A minimum of 50 feet of clear space must be maintained between stacks and any building, public road and railroads.
>    e. A minimum of 100 feet of clear space must be maintained between each $600,000 exposure (four stacks).
>    f. A minimum of 300 feet of clear space must be maintained between each hay storage yard.
>    g. "We" will not pay more than $1,000,000 for loss to hay in any one storage yard described below.
>
>    Main Hay Yard – Located at main processing facility at 2015 Silsbee Road, El Centro, CA.
>
>    North Hay Yard – Located across the RR tracks from the Main Hay Yard, Fence line is 200 feet North of fence line of Main Hay Yard.
>
>    East Hay Yard - Located ¼ mile east of the North Hay Yard.
>
>    \*    If the Storage Distance Warranties are not maintained, the coverage  \*
>         provided by this endorsement will be voided

17. The Nationwide policy also contains a separate "Baled Hay Storage Distance Warranty" endorsement (the "Second Distance Warranty endorsement"), which does not assert a forfeiture of policy benefits for lack of compliance.

18. The Nationwide policy provides coverage limits of $3,000,000 for "Baled Hay in the Open".

19. The Nationwide policy was a renewal.

20. All Star was insured with Nationwide beginning in 2001 and at the time of the occurrence of the fires.

21. All Star timely paid all premiums due throughout its relationship with Nationwide.

22. All Star had timely paid all premiums due for the Nationwide policy in force at the time of the fires.

23. Prior to May 1, 2007, Nationwide provided property coverage to All Star on a "CommercialGard Property" coverage form which provided coverage for baled hay along with other property.

24. However, with the 2007 renewal, Nationwide began using a "Commercial Output Policy" form that did not provide coverage for baled hay.

25. At all relevant times, All Star's baled hay inventory was one of its most valuable items of business property at risk of fire damage.

26. To remedy the lack of coverage for baled hay, Nationwide added a "Stock Coverage" endorsement and the Baled Hay endorsement to the Nationwide policy.

27. At the time Nationwide added the Baled Hay endorsement, it was aware that All Star's Main Hay Yard and North Hay Yard were approximately 200 feet apart.

28. Despite Nationwide's knowledge of the actual 200 foot distance between the North and Main Hay Yards, the storage distance warranty in the Baled Hay endorsement requires that "[a] minimum of 300 feet of clear space must be maintained between each hay storage yard."

29. The storage distance warranty in the Baled Hay endorsement is confusing and contains inherent contradiction.

30. The storage distance warranty in the Baled Hay endorsement contains a provision

that states "[i]f the Storage Distance Warranties are not maintained, the coverage provided by this endorsement will be voided" (the "asserted forfeiture clause").

31.     The storage distance warranty in the Second Distance Warranty endorsement does not contain the asserted forfeiture clause.

32.     Kirk Stewart of Smith-Kandal Insurance Agency sought to have Nationwide explain the application of its storage distance warranties to All Star.

33.     As stated in a September 6, 2007 email from Stewart to Sid Swarthout of All Star: "Dan Begich will be contacting you soon to come down and review the Warranty with you, especially the 'distance' portion."

34.     A true and correct copy of Stewart's September 6, 2007 email is attached hereto as Exhibit 2.

35.     Begich contacted Swarthout on or about September 6, 2007, and informed Swarthout that he would be making arrangements to inspect All Star's facilities.

36.     Nationwide had previously sent its loss control personnel to inspect All Star's facilities on several occasions, with a June 4, 2007 inspection by Begich resulting in no recommendations.

37.     A true and correct copy of Begich's June 4, 2007 inspection report is attached hereto as Exhibit 3.

38.     Begich's first inspection of All Star's facilities after the addition of the Baled Hay endorsement to the Nationwide policy took place on February 4, 2008.

39.     The inspection report from Begich's February 4, 2008 inspection makes no mention of any storage distance issues.

40.     A true and correct copy of Begich's February 4, 2008 inspection report is attached hereto as Exhibit 4.

41.     Nationwide received Begich's report on or about February 4, 2008.

42.     At the time, Begich was an employee or agent of Nationwide.

43.     Between Begich's February 4, 2008 inspection and the fires in 2011, Nationwide never asserted that All Star's Hay Storage Yards were not in strict compliance with Nationwide's

storage distance warranties.

44. Between Begich's February 4, 2008 inspection and the fires in 2011, Nationwide accepted from All Star a total of eleven premium payments, as well as additional payments for increased coverages, without any mention of any alleged breach of the storage distance warranties.

45. Between Begich's February 4, 2008 inspection and the fires in 2011, Nationwide renewed All Star's coverage on three occasions, without any mention of any alleged breach of the storage distance warranties.

46. An aerial photograph obtained from Google Earth dated January 31, 2008, just four days prior to Begich's February 4, 2008 inspection, shows the stack configuration at All Star's North Hay Yard substantially the same as it was in 2011 at the time of the fires.

47. A true and correct copy of the January 31, 2008 aerial photograph from Google Earth is attached hereto as Exhibit 5.

**B.    Nationwide Covered All Star's August 15, 2008 Fire Loss Without Raising an Issue With its Storage Distance Warranties**

48. On August 15, 2008, hay stack no. 5 in All Star's Main Hay Yard was destroyed by fire.

49. All Star tendered the loss of hay stack no. 5 to Nationwide, which assigned claim no. 00266106 to the claim.

50. During the course of investigating claim no. 00266106, Nationwide observed All Star's storage of hay in relation to railroad tracks.

51. During the course of investigating claim no. 00266106, Nationwide observed All Star's storage of hay in relation to property lines and fences.

52. During the course of investigating claim no. 00266106, Nationwide observed All Star's hay storage facilities and the proximity of the stacks to each other.

53. Nationwide paid policy benefits for All Star's hay losses for claim no. 00266106 without asserting a lack of compliance with its storage distance warranties.

**B.     All Star's 2011 Hay Losses by Fire and Nationwide's Denial of Coverage**

54. On February 16, 2011 and again on February 17, 2011, fire swept through All Star's East Hay Yard, destroying more than $7.5 million worth of hay.

55. All Star promptly notified Nationwide of the loss.

56. Nationwide sent an adjuster to the facility on February 23, 2011, who took measurements of All Star's hay stack locations.

57. By email dated February 28, 2011, Swarthout emailed Mr. Brad Ganskow, a Nationwide Commercial Claims Specialist, stating "I was looking at your distance maps today, are we OK on the distances between stacks for hay coverage?"

58. Ganskow did not provide a "yes" or a "no" answer to Swarthout's question, but instead indicated that Nationwide was still evaluating the claim.

59. Between February 16, 2011 and December 8, 2011, Ganskow was an employee or agent of Nationwide.

60. By letter dated March 4, 2011, Ganskow, on behalf of Nationwide, acknowledged the February 16, 2011 fire loss claim.

61. A true and correct copy of Nationwide's March 4, 2011 letter is attached hereto as Exhibit 6.

62. By letter dated March 10, 2011, Ganskow, on behalf of Nationwide, acknowledged the February 17, 2011 fire loss claim.

63. A true and correct copy of Nationwide's March 10, 2011 letter is attached hereto as Exhibit 7.

64. By email to Tim Castelli dated March 17, 2011, Ganskow, on behalf of Nationwide, requested documentation to support the amount of All Star's hay damages and the market value of the hay claimed.

65. A true and correct copy of the March 17, 2011 email is attached hereto as Exhibit 8.

66. On March 24, 2011, a third fire swept through All Star's North Hay Yard, destroying nearly $8 million dollars with of hay.

1        67.    At no time prior to the March 24, 2011 fire did Nationwide assert that All Star had forfeited coverage under the Baled Hay endorsement for the February 16, 2011 and February 17, 2001 fires because the East Hay Yard was purportedly not in strict compliance with its storage distance warranties.

         68.    The March 24, 2011 fire also destroyed stack number 89, which was one of the stacks remaining in the East Hay Yard that escaped the previous fires.

         69.    All Star promptly notified Nationwide of the loss.

         70.    Nationwide acknowledged the claim by letter dated March 28, 2011.

         71.    A true and correct copy of Nationwide's March 28, 2011 letter is attached hereto as Exhibit 9.

         72.    By letter dated April 18, 2011, Nationwide denied coverage for all of the hay destroyed in the February 16, 2011 and February 17, 2011 fires.

         73.    A true and correct copy of Nationwide's April 18, 2011 letter is attached hereto as Exhibit 10.

         74.    Nationwide asserted that All Star had breached the clear space warranty of the Baled Hay endorsement, and stated in its denial letter that "[b]ased on these breaches of the clear space warranty, Nationwide Agribusiness must respectfully deny any and all claims for damage as related to baled hay in the open for the February 16, 2011 and February 17, 2011 fires."

         75.    By separate letter dated April 18, 2011, Nationwide also denied coverage for the hay losses in All Star's North Hay Yard incurred in the March 24, 2011 fire.

         76.    A true and correct copy of Nationwide's April 18, 2011 letter is attached hereto as Exhibit 11.

         77.    Nationwide again asserted that All Star had breached the clear space warranty of the Baled Hay endorsement, and stated in its denial letter that "[b]ased on these breaches of the clear space warranty, Nationwide Agribusiness must respectfully deny any and all claims for damage as related to baled hay in the open in the North Hay Yard for the March 24, 2011 fire."

         78.    However, Nationwide did provide coverage for stack number 89 in the East Hay Yard, stating "Nationwide Agribusiness will provide coverage up to the $150,000 limit for the

1 | damage to Stack No. 89 in the East Hay Yard, for which there were no clear space issues because
2 | of damage to the stacks in the yard from the February 16, 2011 and February 17, 2011 fires."
3 |   79. At the time of the March 24, 2011 fire, several stacks that had survived the
4 | February fires remained in the East Hay Yard, including stack numbers 89, 56, 57, 59, and 68.
5 |   80. Nationwide's April 18, 2011 letter addressing coverage for the February fires
6 | asserts that stack numbers 56, 57, 59, and 68 were in breach of the Baled Hay endorsement's
7 | storage distance warranty.
8 |   81. On March 24, 2011, stack numbers 56, 57, 59, and 68 were in the same location as
9 | they were at the time of the February fires.
10 |   82. As a result of Nationwide's denial of coverage, All Star retained Paul A. Hilding
11 | as coverage counsel.
12 |   83. By letter dated July 21, 2011, Hilding wrote to Nationwide, pointing out errors and
13 | inconsistencies in its coverage position, and demanding coverage for All Star's hay losses.
14 |   84. A true and correct copy of Hilding's July 21, 2011 letter is attached hereto as
15 | Exhibit 12.
16 |   85. Nationwide acknowledged receipt of Hilding's demand by letter dated July 29,
17 | 2011, and responded substantively by letter dated August 11, 2011.
18 |   86. A true and correct copy of Nationwide's August 11, 2011 letter is attached hereto
19 | as Exhibit 13.
20 |   87. The enclosures to Nationwide's August 11, 2011 letter include a series of
21 | photographs taken during the course of Nationwide's investigation of claim no. 00266106.
22 |   88. The photographs follow a page that states:
23 |     **All Star Seed**
    **Claim 00266106**
24 |
    **Photos of hay and seed operation**
25 |     **at loss location.**
26 |   89. One of the photographs from this series has the words "Rail spur at northeast
27 | storage area" printed on it (the "rail spur photograph").
28 |   90. The rail spur photograph was in Nationwide's possession as of December 31,

1 | 2008.

91. Another one of the photographs from this series has the words "Stored hay 'loafs' at loss location" printed on it (the "stored hay photograph").

92. The stored hay photograph was in Nationwide's possession as of December 31, 2008.

### FIRST CAUSE OF ACTION
**Breach of Duty to Indemnify**

93. Plaintiff incorporates by reference the foregoing allegations as though set forth at length herein.

94. Plaintiff has fulfilled all obligations and conditions on its part to be performed under the terms of the Nationwide policy.

95. On or about April 18, 2011 and continuing thereafter, Nationwide breached its duty to indemnify when it denied coverage for All Star's hay losses resulting from the fires.

96. As a legal result of Nationwide's breach of its duty to indemnify, All Star has suffered general damages in the amount of $3,000,000, as well as consequential damages in excess of $2,500,000 and incidental damages, plus interest and attorneys' fees in an amount to be proven at trial.

### SECOND CAUSE OF ACTION
**Breach of Duty to Indemnify – Waiver of Conditions**

97. Plaintiff incorporates by reference the foregoing allegations in paragraphs 1 through 90 as though set forth at length herein.

98. In accordance with rule 8(d) of the Federal Rules of Civil Procedure, which allows for the pleading of alternative statements of a claim, plaintiff alleges the following in the alternative.

99. Plaintiff has fulfilled all obligations and conditions on its part to be performed under the terms of the Nationwide policy, apart from those which Nationwide has waived.

100. At the time it added the Baled Hay endorsement and the Second Distance Warranty endorsement to the Nationwide policy and continuing through the time of the fires,

Nationwide knew that All Star's Hay Storage Yards did not strictly comply with its storage distance warranties.

101. Nationwide knew of this lack of strict compliance through its loss control inspections both before and after the addition of its storage distance warranties, including its inspections on December 7, 2000, March 26, 2002, March 30, 2005, August 1, 2005, June 4, 2007, and February 4, 2008, as well as through its investigation of claim no. 00266106 in 2008.

102. Despite its knowledge of the lack of strict compliance with its storage distance warranties, Nationwide repeatedly renewed its coverage without comment or question, repeatedly accepted premium payments, and provided coverage for claim no. 00266106, a claim involving loss of hay by fire, evincing its intent to relinquish any right it might otherwise have had to require compliance with its storage distance warranties.

103. All Star relied upon Nationwide's conduct to its detriment, in that based upon Nationwide's apparent acceptance of the conditions of All Star's Hay Storage Yards, All Star continued to renew coverage with Nationwide and continued operating its Hay Storage Yards just as it had since at least 2001 and throughout Nationwide's numerous loss control inspections, leading to Nationwide's subsequent denial of coverage for hay losses caused by the fires.

104. Accordingly, Nationwide has waived the application of its storage distance warranties.

105. Pursuant to the Nationwide Policy, Nationwide has a duty to indemnify All Star for its hay losses incurred in the fires.

106. On or about April 18, 2011 and continuing thereafter, Nationwide breached its duty to indemnify when it denied coverage for All Star's hay losses resulting from the fires.

107. As a legal result of Nationwide's breach of its duty to indemnify, All Star has suffered general damages in the amount of $3,000,000, as well as consequential damages in excess of $2,500,000 and incidental damages, plus interest and attorneys' fees in an amount to be proven at trial.

/ / /

/ / /

# THIRD CAUSE OF ACTION
**Breach of Duty to Indemnify – Estoppel**

108. Plaintiff incorporates by reference the foregoing allegations in paragraphs 1 through 90 as though set forth at length herein.

109. In accordance with rule 8(d) of the Federal Rules of Civil Procedure, which allows for the pleading of alternative statements of a claim, plaintiff alleges the following in the alternative.

110. Plaintiff has fulfilled all obligations and conditions on its part to be performed under the terms of the Nationwide policy, apart from those which Nationwide is estopped from asserting.

111. At the time it added the Baled Hay endorsement and the Second Distance Warranty to the Nationwide policy and continuing through the time of the fires, Nationwide knew that All Star's Hay Storage Yards did not strictly comply with its storage distance warranties.

112. Nationwide knew of this lack of strict compliance through its loss control inspections both before and after the addition of its storage distance warranties, including its inspections on December 7, 2000, March 26, 2002, March 30, 2005, August 1, 2005, June 4, 2007, and February 4, 2008, as well as through its investigation of claim no. 00266106 in 2008.

113. Despite its knowledge of the lack of strict compliance with its storage distance warranties, Nationwide repeatedly renewed its coverage without comment or question, repeatedly accepted premium payments, and provided coverage for claim no. 00266106, involving loss of hay by fire.

114. Upon information and belief, Nationwide intended that All Star believe that strict compliance with Nationwide's storage distance warranties was unnecessary so that it would continue to operate its Hay Storage Yards as it had since at least 2001 and give Nationwide an excuse to deny coverage in the event of a large loss while continuing to receive premium payments.

115. Nationwide's course of conduct led All Star to reasonably believe that strict

compliance with the storage distance warranties was not a necessary element of coverage, that All Star's Hay Storage Yards were in substantial compliance, and that Nationwide would provide full coverage for fire losses to hay occurring in the yards.

116. All Star was unaware that Nationwide, despite its apparent acceptance of the conditions of All Star's Hay Storage Yards, secretly believed that All Star's hay storage facilities were not in compliance with its storage distance warranties and intended to deny coverage for any substantial losses to hay in All Star's Hay Storage Yards.

117. All Star relied upon Nationwide's actions to its detriment, in that it continued to operate its Hay Storage Yards as it had since the inception of Nationwide's coverage, and continued to renew coverage with Nationwide rather than place coverage with another insurer, leading to Nationwide's denial of coverage for losses to hay resulting from the fires.

118. Accordingly, Nationwide is estopped from asserting the application of its storage distance warranties.

119. Pursuant to the Nationwide Policy, Nationwide has a duty to indemnify All Star for its hay losses incurred in the fires.

120. On or about April 18, 2011 and continuing thereafter, Nationwide breached its duty to indemnify when it denied coverage for All Star's hay losses resulting from the fires.

121. As a legal result of Nationwide's breach of its duty to indemnify, All Star has suffered general damages in the amount of $3,000,000, as well as consequential damages in excess of $2,500,000 and incidental damages, plus interest and attorneys' fees in an amount to be proven at trial.

**FOURTH CAUSE OF ACTION**
**Breach of Implied Covenant of Good Faith and Fair Dealing**

122. Plaintiff incorporates by reference the foregoing allegations as though set forth at length herein.

123. Plaintiff has fulfilled all obligations and conditions on its part to be performed under the terms of the Nationwide policy.

124. In the alternative, Plaintiff has fulfilled all obligations and conditions on its part to

be performed under the terms of the Nationwide policy, apart from those which Nationwide has waived or is estopped from asserting.

125.    Implied in the Nationwide policy by operation of law is an implied covenant of good faith and fair dealing which requires insurers to act as fiduciaries, and to consider the interests of the insureds as being at least equal to their own.

126.    Nationwide breached the implied covenant, at a minimum, as follows:  (a) With intent to defraud its insured, by attaching a restrictive coverage provision to its policy while intending to assert that its long-time insured had never been and was not in strict compliance with its terms, all the while renewing coverage and accepting policy premiums without comment or question; (b) By intentionally lulling its insured into a false sense of security by failing to raise any objection to its insured's hay storage practices, while secretly planning not to pay claims for hay losses by fire; (c) By failing and refusing to consider the interests of its insured as equal to its own, taking inconsistent positions with regard to the application of its storage distance warranties and unreasonably evaluating All Star's hay losses with a goal of denying coverage; and (d) By violating California's Fair Claims Settlement Practices Regulations, Title 10, section 2695.7(b) by failing to accept or deny a claim, in whole or in part, within forty (40) calendar days after receiving proof of the claim.

127.    As a legal result of the foregoing wrongful conduct of Nationwide, All Star has suffered general damages in the amount of $3,000,000, as well as consequential damages in excess of $2,500,000.00 and incidental damages, plus interest and attorneys fees in an amount to be proven at trial.

128.    Nationwide committed the foregoing wrongful conduct with the intent to deceive and defraud its insured at a time when it was most vulnerable and in need of the superior resources of its insurer, and All Star is thereby entitled to recover punitive damages in an amount sufficient to punish and make an example of Nationwide to prevent it from engaging in such deceitful conduct in the future.

/ / /

/ / /

**WHEREFORE, PLAINTIFF prays for judgment as follows**:

1. For general, special, consequential and incidental damages according to proof;
2. For prejudgment interest at the legal rate;
3. For reasonable attorneys fees incurred to recover policy benefits;
4. For punitive damages; and
5. For such other and further relief as the Court may deem just and proper.

DATED:  January 12, 2012                                HILDING LAW FIRM


By: /s/ *Paul A. Hilding*
PAUL A. HILDING
hilding@hildinglaw.com
JAMES H. PYLE
jpyle@hildinglaw.com
Attorneys for Plaintiff
ALL STAR SEED

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial.

DATED:  January 12, 2012                    HILDING LAW FIRM


By: /s/ *Paul A. Hilding*
PAUL A. HILDING
hilding@hildinglaw.com
JAMES H. PYLE
jpyle@hildinglaw.com
Attorneys for Plaintiff
ALL STAR SEED

JS 44 (Rev. 09/11)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
All Star Seed, a California corporation

## DEFENDANTS
Nationwide Agribusiness Insurance Company, an Iowa corporation

**(b)** County of Residence of First Listed Plaintiff: Imperial County, CA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: Polk County, IA
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Paul A. Hilding, Esq. (110656)
Hilding Law Firm
501 W. Broadway, Ste. 1760, San Diego, CA 92101; 619-233-4200

Attorneys *(If Known)*

'12CV0146 L    BLM

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question *(U.S. Government Not a Party)*
- ☒ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff) (For Diversity Cases Only) and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| | | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Med. Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| | | | ☐ 791 Empl. Ret. Inc. Security Act | | ☐ 895 Freedom of Information Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 220 Foreclosure | ☐ 441 Voting | **Habeas Corpus:** | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 530 General | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee (Prisoner Petition) | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district *(specify)*
- ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1332

Brief description of cause:
Breach of Contract-Duty to Indemnify; Breach of the Implied Covenant of Good Faith and Fair Dealing

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23

**DEMAND $** 5,500,000.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE
DOCKET NUMBER

DATE: 01/12/2012

SIGNATURE OF ATTORNEY OF RECORD
/s Paul A. Hilding

**FOR OFFICE USE ONLY**

RECEIPT #    AMOUNT    APPLYING IFP    JUDGE    MAG. JUDGE