UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALL STAR SEED, | Case No. 12CV146-L (BLM) |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART (1) PLAINTIFF'S MOTION TO COMPEL AND RELATED RELIEF AND (2) DENYING DEFENDANT'S REQUEST FOR RULE 11 SANCTIONS** |
| v. | |
| NATIONWIDE AGRIBUSINESS INSURANCE COMPANY, | |
| Defendant. | **[ECF Nos. 45 & 46]** |

Currently before the Court is Plaintiff's March 22, 2013 Motion to Compel Depositions and Related Relief [ECF No. 45 ("MTC")], Defendant's March 29, 2013 opposition to the motion [ECF No. 46 "Oppo."], and Plaintiff's April 5, 2013 reply. ECF No. 47 ("Reply"). For the reasons set forth below, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's motion to compel depositions and related relief and **DENIES** Defendant's request for Rule 11 sanctions.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed its complaint in this matter on January 18, 2012 [ECF No. 1] and filed an amended complaint on April 11, 2013 [ECF No. 50 ("FAC")]. The case concerns a dispute over insurance coverage. FAC at 1. Plaintiff, a company in the business of buying and selling hay [MTC at 7], alleges that Defendant improperly refused to indemnify it for

substantial property loss that occurred after three arson fires in February and March of 2011 that destroyed Plaintiff's hay supply worth several million dollars.  FAC.  Plaintiff alleges that Defendant denied coverage "based upon alleged breaches of distance warranties contained in its Baled Hay in the Open Coverage endorsement (the "420 form")".  MTC at 7.

On April 30, 2012, this Court issued a Case Management Conference Order Regulating Discovery and Other Pretrial Proceedings that set several deadlines related to discovery.  ECF No. 17.  In that Order, the Court stated that "[a]ll discovery shall be completed by all parties on or before December 14, 2012."  Id. at 3.  The Court twice extended that deadline, first to January 18, 2013 [ECF No. 25 at 2] and finally to March 18, 2013 [ECF No. 33 at 2] in response to joint motions from the parties seeking additional time to complete discovery.  ECF Nos. 24 & 32.

Throughout the course of the litigation, the parties have had multiple discovery disputes.  Specifically, on September 25, 2012, Defendant filed a discovery motion seeking a determination of the sufficiency of Plaintiff's responses to Defendant's first set of requests for admissions ("RFAs") and the recovery of the costs and fees in the amount of $3,243.98 incurred by Defendant in bringing the motion.  ECF No. 23.  On February 22, 2013, the Court ordered the parties to lodge letter briefs after attorneys Paul Hilding and Brian Pelanda jointly contacted the Court regarding a discovery dispute arising out of Plaintiff's noticed deposition of Mr. Kirk Stewart.  ECF No. 42.  And now, in accordance with the briefing schedule issued by the Court on March 18, 2013, Plaintiff has filed a discovery motion seeking to compel various depositions and other related relief.  MTC.  Defendant filed a timely Opposition on March 29, 2013 [Oppo.] seeking Rule 11 sanctions and Plaintiff replied on April 5, 2013.  Reply.  Having reviewed the briefing submitted, and for the reasons set forth below, Plaintiff's motion is **GRANTED IN PART AND DENIED IN PART** and Defendant's request is **DENIED**.

## DISCUSSION

The instant discovery disputes concern Defendant's responses or lack thereof to various requests for production ("RFP") from Plaintiff, Plaintiff's alleged need for additional

depositions due to the prejudice Plaintiff has suffered from Defendant's discovery-related conduct, Plaintiff's request for sanctions and future deposition costs, and Defendant's request that Plaintiff be sanctioned in accordance with Federal Rule of Civil Procedure ("FRCP" or "Fed. R. Civ. P.") 11.

**I.    Plaintiff's Motion as to Requests for Production is Timely**

Defendant contends that Plaintiff's motion is untimely as to RFPs 1 and 2. Oppo. at 12. In support, Defendant states that it served its responses to RFP 1 on May 31, 2012 and to RFP 2 on December 14, 2012, and that the Court's scheduling order provided that "in no event shall discovery motions be filed more than sixty (60) days after the date upon which the event giving rise to the discovery dispute occurred. . . . For written discovery, the event giving rise to the discovery dispute is either the service of the response, or if no response was served, the initial date the response was due." Id. Defendant further argues that Plaintiff's claim that Defendant "wrongfully withheld" responsive documents is baseless. Id.

Plaintiff argues that its motion is timely because it did not learn that Defendant "had wrongfully withheld documents responsive to RFP 1" until February 20, 2013, which was "the event giving rise to the discovery dispute." MTC at 17-18.

The Court finds that Plaintiff's motion is timely. Plaintiff claims that it was not aware of Defendant's allegedly insufficient discovery responses until February 20, 2013 and Plaintiff's motion was filed within thirty-days of that realization on March 22, 2013. MTC. Plaintiff could not have learned of the allegedly insufficient responses prior to Defendant's supplemental production on February 20, 2013.

**II.   Requests for Production 3 Nos. 37 & 38**

Plaintiff alleges that Defendant "refused to provide any response to nos. 37 and 38." MTC at 24. RFP 37 requests:

> All **DOCUMENTS** that refer, or relate to Mr. Schiefler's performance as a Loss Control representative for the period of January 1, 2010 to May 1, 2011, including but not limited to any performance reviews, customer complaints, or any supervisorial comments, criticisms, or reprimands. This request covers all **DOCUMENTS** that refer to or relate to Mr. Schiefler's performance during

the specified periods regardless of whether the documents were created during the January 1, 2010 - May 1, 2011 period or after that period.

MTC at Exh. 25 at 7 (emphasis in original).  RFP 38 requests: "All **DOCUMENTS** that refer or relate to the reasons for **YOUR** termination of Mr. Schiefler's employment."  MTC at Exh. 25 at 8 (emphasis in original).  Plaintiff alleges that in refusing to answer, Defendant initially relied on privacy and relevancy concerns, but has since begun to argue that Plaintiff is simply not entitled to the discovery.  Id. at 24.  Plaintiff argues that Mr. "Schiefler's skill as a loss control representative and his credibility as a witness are critical issues in this case" and that "documents relating to Schiefler's performance and termination may well contain candid information undermining Schiefler's claimed skill as a loss control representative and his veracity."  Id. at 26.  Plaintiff further argues that any privacy claims by Defendant "must be balanced against the need for discovery" and that there are very little privacy concerns here as there is an active protective order in the case.  Id. at 26-27.

Defendant contends that Plaintiff's "RFP Nos. 37 and 38 severely infringe upon the privacy rights of an individual not a party to this action, and [Plaintiff] does not have a compelling need for any of this information."  Oppo at 21.  Defendant states that the requests are not relevant to Plaintiff's claims in this litigation and that private information about a former employee who is not a party to the action, not involved in the denial of Plaintiff's 2011 claim, and who has already been deposed should not be produced.  Id. at 22.  Defendant notes that the requested documents are not discoverable "simply because the information pertains to Schiefler's credibility as a witness" and that under California law, the right to privacy is favored absent a compelling need which Plaintiff has failed to demonstrate.  Id. at 24-26.  Finally, Defendant contends that Plaintiff failed to obtain the desired information through less intrusive means, such as during his deposition.  Id. at 27.

The FRCP generally allow for broad discovery, authorizing parties to obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1).  Also, "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action."  Id.  Relevant information for

discovery purposes includes any information "reasonably calculated to lead to the discovery of admissible evidence," and need not be admissible at trial to be discoverable.  Id.  There is no requirement that the information sought directly relate to a particular issue in the case.  Rather, relevance encompasses any matter that "bears on" or could reasonably lead to matter that could bear on, any issue that is or may be presented in the case. Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978).  District courts have broad discretion to determine relevancy for discovery purposes.  See Hallett v. Morgan, 296 F.3d 732, 751 (9th Cir. 2002).  Similarly, district courts have broad discretion to limit discovery where the discovery sought is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C).  Limits should be imposed where the burden or expense outweighs the likely benefits.  Id.

A party may request the production of any document within the scope of Rule 26(b). Fed. R. Civ. P. 34(a).  "For each item or category, the response must either state that inspection and related activities will be permitted as requested or state an objection to the request, including the reasons."  Id. at 34(b)(2)(B).  The responding party is responsible for all items in "the responding party's possession, custody, or control."  Id. at 34(a)(1). Actual possession, custody or control is not required.  Rather, "[a] party may be ordered to produce a document in the possession of a non-party entity if that party has a legal right to obtain the document or has control over the entity who is in possession of the document. Soto v. City of Concord, 162 F.R.D. 603, 619 (N.D. Cal. 1995).  "In the context of discovery of confidential information in personnel files, even when such information is directly relevant to litigation, discovery will not be permitted until a balancing of the compelling need for discovery against the fundamental right of privacy determines that disclosure is appropriate."  Liberty Mut. Ins. Co. v. California Auto. Assigned Risk Plan, 2012 WL 892188, *3 (N.D. Cal., March 14, 2012) (citing El Dorado Savings & Loan Assn. V. Superior Court, 190 Cal. App.3d,  346 (1987)) (quoting Cutter v. Brownbridge, 183 Cal.App.3d 836, 843, (1986)).  "[E]ven where strong public policy against disclosure exists, as in the case of

personal files, discovery is nonetheless allowed if (1) the material sought is "clearly relevant," and (2) the need for discovery is compelling because the information sought is not otherwise readily obtainable." Matter of Hawaii Corp., 88 F.R.D. 518, 524 (D.C. Hawaii, 1980) (citing New York Stock Exchange, Inc. v. Sloan, 22 Fed.R.Serv.2d 500, 505 (S.D.N.Y.1976)) and United States v. American Optical Co., 39 F.R.D. 580, 589 (N.D. Cal. 1966) (citations omitted).

Here, Plaintiff's requests are overbroad. Plaintiff is seeking all documents that refer or relate to Mr. Schiefler's performance during the specified period of time and all documents that refer to or relate to his termination. MTC at Exh. 25. In addition, Plaintiff has failed to demonstrate a compelling need for all of the requested documents. While it is true Plaintiff does not have direct access to Mr. Schiefler's personnel records, Plaintiff has deposed Mr. Schiefler and had the opportunity to ask him directly about his termination from Defendant and any explanations that were provided to him for the termination. MTD at Exh. 20.[1] Plaintiff also had the option of conducting additional depositions with Mr. Schiefler's supervisor or other key personnel to gather additional information, but chose not to do so.

Despite Plaintiff's failings, the Court finds that some portions of the documents requests are relevant and should be produced. Accordingly, Plaintiff's motion to compel responses to RFPs 37 & 38 is **GRANTED IN PART AND DENIED IN PART** as follows:

- Defendant is **ORDERED** to provide Plaintiff with all documents that refer to Mr. Schiefler's honesty, credibility, or record keeping including but not limited to any performance reviews, customer complaints, or any supervisorial comments, criticisms, or reprimands during the January 1, 2010 - May 1,

---

[1] When asked about his termination, Mr. Schiefler stated that the termination was due to "a philosophical difference between the people in [the] home office in Des Moines and how [he did] his job" and that "there's certain things that I would do and there are certain things that they didn't appreciate." MTD at Exh. 20 at 11. When asked to elaborate on the philosophical differences, Mr. Schiefler stated that Defendant "didn't appreciate the culture of a business as much as [he] did" and that he "felt as though sprinkler systems and alarm systems are shouting in the dark. You need to control the items prior to the fire or the break-in." Id. at 13. Mr. Schiefler concluded by stating that he was not criticized for his lack of candor, but that he was criticized for "not adequately documenting [his] files." Id.

2011 period;

- Defendant need not produce documents in response to FRCP 38 as Plaintiff has deposed Mr. Schiefler regarding his termination and failed to establish a compelling need for this request; and

- All information produced in response to this request will be subject to the protective order entered on May 21, 2012. See ECF No. 18.

## III.   Request for Production 4 Nos. 42-44

Plaintiff alleges that Defendant "has wrongfully refused to provide any documents responsive to [RFPs 42-44]." MTC at 27.  RFPs 42-44 seek:

- "[a]ll **DOCUMENTS** that constitute, refer, or relate to **YOUR** claim file for the 2010 **FIRE CLAIM**;"

- "[a]ll documents that refer or relate to the 2010 **FIRE CLAIM**, including but not limited to any underwriting or Loss Control **DOCUMENTS**;" and

- "[a]ll photographs, diagrams, maps, and other depictions of **ALL STAR**'s facilities or property taken or prepared at any time after January 1, 2006, including but not limited to photographs, diagrams, maps and other depictions related to the **2010 FIRE CLAIM** in the hay press area."

MTC at Ex. 26 (emphasis in original).  Plaintiff alleges that Defendant "has refused to provide any documents, asserting boilerplate objections and stating that the '**2010 FIRE CLAIM** is simply not relevant to this action.'" MTC at 27.  In its opposition, Defendant has agreed "to produce its claim file for All Star's 2010 fire claim in response to" the requests on or before April 30, 2013.  Oppo. at 28.  Plaintiff states this offer "is not only untimely, it is insufficient." Reply at 5.  Plaintiff wants all documents related to the fire regardless of whether or not those documents are contained in the claim file and the requested photographs at any time after January 1, 2006.  Id.  Additionally, Plaintiff argues that allowing Defendant to wait until April 30, 2013 to produce the responsive documents will "preclude [Plaintiff] from using the documents in support of its summary judgment motion which must be filed by this court's April 18th motion cutoff date." Id.

1       As stated in Section II, the FRCP generally allow for broad discovery, authorizing

2   parties to obtain discovery regarding "any nonprivileged matter that is relevant to any

3   party's claim or defense," but District courts have broad discretion to determine relevancy

4   for discovery purposes and to limit discovery. Fed. R. Civ. P. 26(b)(2)(C); <u>see also</u> <u>Hallett</u>

5   <u>v. Morgan</u>, 296 F.3d 732, 751 (9th Cir. 2002).  A party may request the production of any

6   document within the scope of Rule 26(b).  Fed. R. Civ. P. 34(a).

7       Here, the Court finds that Plaintiff's request is overbroad and seeks irrelevant

8   documents.  The 2010 fire is not the subject of the instant lawsuit and the 2010 fire did not

9   involve hay that was baled in the open and stored in Plaintiff's three hay yards[2].   However,

10  Defendant has agreed to produce the 2010 claim file and the Court finds that photographs,

11  diagrams, maps, and other depictions of Plaintiff's three hay yards are relevant for purposes

12  of FRCP 26.  Accordingly, Plaintiff's request for the production of documents in response

13  to RFPs 4 Nos. 42-44 is **GRANTED IN PART AND DENIED IN PART** as follows:

14      •   Defendant shall produce its claims file for Plaintiff's 2010 fire claim by **May**

15          **6, 2013**[3] as stated in its opposition; and

16      •   Defendant is **ORDERED** to produce all photographs, diagrams, maps, and

17          other depictions of the three hay yards at issue in this case that were created

18          after January 1, 2006.

19      •   Plaintiff's requests are **DENIED** in all other respects.

20  **IV.**   **Plaintiff's Request for Additional Depositions**

21      Plaintiff argues that Defendant's decision to withhold critical documents until

22  February 20, 2013 prejudiced Plaintiff and has resulted in the need for Plaintiff to take

23  additional depositions.  MTC at 18-22.  Plaintiff states that as a result of the February 20,

24

25      [2]The 2010 fire claim concerned a fire inside Plaintiff's hay press barn which is not the case in the fires
26  that are the subject of the instant matter. MTC at Swarthout Decl. at 2; Oppo. at Exh. Y; Oppo. at Pelanda
    Decl. at 12.

27      [3]Defendant volunteered to produce the claims file by April 30, 2013. Oppo. at 28. If the file has not
28  yet been produced, Defendant must do so by **May 6, 2013**. In order to prevent any prejudice to Plaintiff, the
    Court will amend the scheduling order as explained in Section VIII.

2013 production, it learned through emails sent to Mr. Begich that Mr. Kenneth Hake, Defendant's former Director of Commercial Underwriting, "played a much larger role in the addition of the 420 form[4] to the policy than [Plaintiff] was previously aware." Id. at 18-19. Plaintiff also learned that Mr. Hake communicated with Ms. Rose Nwaturuocha about her mishandling of the policy renewal. Id. at 19. Plaintiff argues that had it received the documents earlier, as part of Defendant's June 19, 2012 production, it would have approached the depositions of Ms. Nwaturuocha and Mr. Begich in a different manner and sought additional information. Id. The delay left Plaintiff "shooting in the dark" and unable to "properly authenticate" the documents and emails. Id. at 20.

To remedy this situation, Plaintiff seeks to have the Court order Defendant to provide a declaration from its custodian of records with "(1) a description of the search conducted detailing the persons involved and the date, time and scope of all searches undertaken to locate the responsive documents; (2) a statement identifying by Bates numbers when and where the documents were located by Nationwide, and when they were provided to counsel for production; and (3) a statement confirming with respect to each request that all responsive documents have been produced," and to permit Plaintiff to depose the custodian(s) of records, re-depose Ms. Nwaturuocha and Mr. Begich and depose Mr. Hake[5]. Id. at 22.

Defendant contends that it has complied in good faith with all discovery obligations and supplemented its production in accordance with Fed. R. Civ. P. 26 as new information was discovered. Oppo. at 12. Defendant notes that the portion of documents that were issued as supplemental is "only a fraction of the totality of the documents." Id. at 13. Defendant further contends that Plaintiff has not demonstrated prejudice due to the supplemental productions and states that Plaintiff's desire to authenticate the emails could be satisfied with a stipulation. Id. Defendant notes that Plaintiff has already deposed Ms.

---

[4]Plaintiff states that Defendant based its denial of coverage on Plaintiff's lack of compliance with the 420 form. MTC at 18.

[5]The Court's ruling on Mr. Hake's deposition will be discussed in Section V.

Nwaturuocha and questioned her about her involvement in underwriting Defendant's policy in 2007 (which is not at issue in this case) and that Plaintiff mischaracterizes the nature of the email between Ms. Nwaturuocha and Mr. Hake. Id. at 14. Defendant further notes that Plaintiff has not explained why it needs to re-depose Mr. Begich "about a single email he received in January 2008" which has no relevance on the insurance contract at issue which came into play two years after that email. Id. at 14-15. Finally, Defendant contends that the testimony Plaintiff seeks to obtain "constitutes clearly inadmissible parol evidence" and, as a result, the expense of re-deposing the witnesses outweighs any benefit that Plaintiff could gain. Id. at 15. Defendant requests that Plaintiff not be allowed to re-depose Ms. Nwaturuocha and Mr. Begich, and that if the Court does permit the re-depositions that those depositions be limited to the documents Defendant produced in February 2013 and take place by video conference to avoid the burdensome expense of out-of-state travel. Id. at 15. Defendant does not address Plaintiff's requests regarding the custodian of records.

A party must obtain leave from the court to re-open a deposition. FRCP 30(a)(2)(A)(ii); accord Couch v. Wan, 2012 WL 4433470, *3 (E.D. Cal. Sept. 24, 2012). "Whether to re-open a deposition lies within the court's discretion." Bookhamer v. Sunbeam Products Inc., 2012 WL 5188302, *2 (N.D. Cal. Oct. 19, 2012) (citing Couch, 2012 WL 4433470, at *3). Absent a showing of "good need," a court generally will not order a re-opening. Id. (citing Couch, 2012 WL 4433470, at *3). "Good need" may be a "long passage of time with new evidence or new theories added to the complaint." Id. (citing Dixon v. Certainteed Corp., 164 F.R.D. 685, 690 (D. Kan. 1996)); Graebner v. James River Corp., 130 F.R.D. 440, 441 (N.D. Cal. 1990)). "The court will not find good need if it determines that one of the following factors applies: (i) the discovery [second deposition] sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of

12CV146-L(BLM)

1  the case, the amount in controversy, the parties' resources, the importance of the issues

2  at stake in the action, and the importance of the discovery in resolving the issues."

3  Id. (quoting Fed.R.Civ.P. 26(b)(2)(C)) (brackets in original).

4       Plaintiff has demonstrated sufficient "good need" to justify the re-deposition of Mr.

5  Begich and Ms. Nwaturuocha, with certain limitations.  The information sought is relevant

6  to Plaintiff's theory of waiver even if it may not be admissible as Defendant alleges [Oppo.

7  at 15].   Additionally, while it is true that Plaintiff has already questioned the witnesses

8  about their roles within Defendant's organization and any part they may have played in

9  Defendant's relationship with Plaintiff, the fact of the matter is that Plaintiff did not have

10  the opportunity to question the witnesses about the documents produced in February 2013,

11  solely due to Defendant's failure to produce them.  And while Plaintiff may have explored

12  its theory of waiver via questions not related to the February 2013 documents, the Court

13  can not be certain because the parties only provided snippets of the deposition testimony.

14  See Oppo. at Exhs. GG & DD; see also MTC at Exh. 23.  The emails in the February 2013

15  production constitute new evidence that Plaintiff could not have obtained from another

16  source and provide the requisite good need for re-deposing the witnesses.  See Syncora

17  Guarantee Inc. v. EMC Mortgage Corp., 2013 WL 1208936, *2-3 (N.D. Cal. March 25,

18  2013)(finding good cause to reopen the deposition of the witness where Plaintiff could not

19  have asked about documents that had not been produced at the time of the deposition,

20  Plaintiff did not choose to depose the witness relatively early in the discovery process, and

21  the additional deposition would be limited to discussing only the new documents and not

22  about the initial deposition).

23       Accordingly, Plaintiff's request to re-depose Mr. Begich and Ms. Nwaturuocha is

24  **GRANTED IN PART**.  Plaintiff may re-depose Mr. Begich and Ms. Nwaturuocha, however,

25  both depositions **shall be limited to questions pertaining to the documents**

26  **produced by Defendant in February 2013**.  No questions regarding Mr. Begich or Ms.

27  Nwaturuocha's first deposition, or issues covered therein, shall be permitted.  In addition,

28  Ms. Nwaturuocha's deposition shall take place via video conference since she is located out-

1    of-state.[6]

2         Plaintiff's request for a declaration from Defendant's custodian of records with "(1)

3    a description of the search conducted detailing the persons involved and the date, time and

4    scope of all searches undertaken to locate the responsive documents; (2) a statement

5    identifying by Bates numbers when and where the documents were located by Nationwide,

6    and when they were provided to counsel for production; and (3) a statement confirming

7    with respect to each request that all responsive documents have been produced," and

8    permission to depose the custodian(s) of records is **DENIED**.  Plaintiff has not established

9    that Defendant's February 2013 production was the result of intentional improper

10   withholding or bad faith.  Defendant explained that after Plaintiff raised its concern about

11   the production, it began an extensive search for responsive documents and emails not

12   previously produced.  Oppo. at 10.  The extensive search required Defendant to have its

13   Discovery Management Unit ("DMU") contact its Information Risk Management Incident

14   Management Response Center ("IRMIMC") to have individual employee's files searched to

15   see if any back-up storage drives existed with responsive documents.  Id.  Because IRMIMC

16   had to restore back-up storage tapes and perform additional searches, the results were not

17   sent to DMU until January 16, 2013.  Id. at 10-11.  DMU forwarded the documents to

18   Defendant in February 2013 after processing them.  Id. at 11.  The search resulted in 930

19   pages of email strings, some of which had already been produced.  Id.  Plaintiff has not

20   provided any evidence that Defendant was intentionally withholding the documents and

21   emails or behaving inappropriately in any way.

22        Given Defendant's explanation for its supplemental disclosures and Plaintiff's failure

23   to demonstrate bad faith or that documents were wrongfully withheld, Plaintiff's request

24   for a declaration from Defendant's custodian of records is **DENIED**.

25   ///

26   ///

27   ———————————————

28       [6]The Court believes that Mr. Begich lives in the San Diego area so his deposition may occur in person. If Mr. Begich lives outside of the San Diego area, his deposition also shall take place via video conference.

**V.     Defendant's Request to Strike "New Witnesses" and RMBP Manual or in the Alternative Depose the "New Witnesses"**

Plaintiff argues that Defendant's supplemental Fed. R. Civ. P. 26 disclosures "should be stricken, or in the alternative [Plaintiff] allowed to depose the relevant witnesses." MTC at 23. In support, Plaintiff states that Defendant disclosed two new witnesses, Mr. Hake and Mr. John Savona, and the RMBP manual for the first time on February 28, 2013. Id. This was three weeks before the close of discovery and after Plaintiff had completed all of its depositions. Id. Plaintiff alleges that Defendant has been aware of these witnesses and the manual "since the inception of this lawsuit and accordingly has no excuse for failing to disclose this information in April 2012." Id. Plaintiff alleges that it has been prejudiced by Defendant's actions and "deprived of the opportunity to depose the relevant witnesses." Id. at 24. Plaintiff seeks to have the Court reopen discovery, allow Plaintiff to depose Mr. Hake and Mr. Savona, and Defendant's 30(b)(6) designee with regard to the RMBP manual, reset the remaining deadlines accordingly, or, in the alternative, "strike [Defendant's] February 28, 2013 supplemental disclosures and preclude [Defendant's] use of the witnesses and evidence at trial." Id.

Defendant contends that its "supplemental disclosures were proper and [Plaintiff's] assertion that Hake and Savona are newly identified witnesses is patently dishonest." Oppo. at 15. Defendant states that parties are not only permitted to, but are required to, supplement their initial disclosure under Fed. R. Civ. P. 26 and that Plaintiff's request to strike the supplemental information is improper. Id. at 16. Defendant responds that it served initial disclosures on April 20, 2012, and thrice supplemented those disclosures, each time reserving its right and duty to supplement. Id. Defendant notes that Plaintiff has been aware of the witnesses at issue, Mr. Hake and Mr. Savona, for more than eight months.[7] Id. As such, Defendant contends that Plaintiff was in no way deprived of the

---

[7]Defendant states that Mr. Hake's name was mention more than 310 times in the documents that were produced to Plaintiff on October 10, 2012 and that Plaintiff's counsel questioned other witnesses about Mr. Hake in previous depositions. MTC at 17-18. Defendant further states that both parties produced documents mentioning Mr. Savona and that Plaintiff's counsel used the documents in its depositions of other witnesses.

opportunity to depose these witnesses and asks that the Court "not reward [Plaintiff's] dishonesty by allowing these additional depositions to take place after the discovery cut-off date." Id. at 20. Defendant also states that there is no basis for striking the RMBP manual which Plaintiff's counsel did not request until November 13, 2012 after he had already conducted nine depositions. Id. Defendant states that it would have stipulated to the authenticity of the document had Plaintiff asked and that a Rule 30(b)(6) deposition regarding the manual should not be permitted. Id.

Plaintiff responds that Defendant has not satisfied its burden to show that its late disclosures were harmless. Reply at 9. Plaintiff characterizes Defendant's actions as "trial by ambush" and states that it has deprived Plaintiff of the opportunity to have the RMBP manual added to the items for which Defendant had to produce with its FRCP 30 (b)(6) documents. Id. at 10.

Under Rule 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure is substantially justified or is harmless." To determine whether the failure is substantially justified or harmless, courts consider: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence, and (5) the nondisclosing party's explanation for it[s] failure to disclose the evidence." Bookhammer v. Sunbeam Products, Inc. 2012 WL 4513872, *2 (N.D. Cal. Oct. 1, 2012) (citing S.F. Baykeeper v. W. Bay Sanitary Dist., 791 F. Supp.2d 719, 733 (N.D. Cal. 2011)).

In addition to disallowing the use of that evidence, "the court, on motion and after giving an opportunity to be heard: (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure; (B) may inform the jury of the party's failure; and (C) may impose other appropriate sanctions," including "(i) directing that the

_____

Id. at 19.

matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (iii) striking pleadings in whole or in part; (iv) staying further proceedings until the order is obeyed; (v) dismissing the action or proceeding in whole or in part; (vi) rendering a default judgment against the disobedient party; or (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination." Fed. R. Civ. P. 37(b)(2)(A)(i)-(vi) & 37(c)(1)(A-C).

Here, Defendant has failed to demonstrate that its failure to initially provide the identities of Mr. Savona and Mr. Hake and the RMBP manual was substantially justified. Instead, Defendant merely states that it identified the witnesses after discovering that they "were not listed in its previous disclosures" and that it identified the RMBP manual within a few months of Plaintiff requesting it. Oppo. at 16 & 20.  Defendant does attempt to demonstrate that the supplemental disclosures were harmless by emphasizing the fact that Plaintiff was aware of the two witnesses prior to Defendant's supplemental disclosure of the two witnesses and stating that "[i]t is simply impossible for [Plaintiff] to have been prejudiced by the production of [the RMBP manual] in February 2013 before the close of discovery." Id. at 16 & 20.

After considering the relevant factors, the Court finds that Defendant's failure to initially disclose the witnesses is sufficiently harmless under the applicable test to permit Defendant to use the newly identified witnesses.[8]  The first four factors weigh in favor of allowing the witnesses.  First, the identification of Mr. Hake and Mr. Savona should not have been surprising to Plaintiff.  Defendant asserts, and Plaintiff does not dispute, that Plaintiff produced 35 emails between Mr. Hake and Plaintiff's insurance agent, Kirk Stewart.  Oppo. at 17.  In addition, Defendant states that it produced 234 pages of email in which Mr. Hake's name was mentioned more than 310 times and that the emails are specific to the

---

[8] However, as discussed below, the Court finds the timing of Defendant's supplemental disclosure suspect and authorizes Plaintiff to depose the newly-identified witnesses.

420 endorsement which Plaintiff alleges was the basis for Defendant's denial of coverage. Id.; MTC at 7.  Furthermore, Defendant notes that during Plaintiff's deposition of Ms. Nwaturuocha, she testified that Mr. Hake was her manager and that endorsements such as the 420 endorsement fell under Mr. Hake's responsibilities and that he would have communicated about the endorsement with Plaintiff.  Oppo. at 18.  Finally, Defendant notes that Plaintiff deposed Mr. Westphalen (an underwriter) and Mr. Johnson, and questioned both men multiple times about Mr. Hake.  Id.  Similarly, Plaintiff was made aware of Mr. Savona and should not have been surprised by his role in the case.  Defendant states that Plaintiff received letters identifying Mr. Savona as a Loss Control Manger who visited Plaintiff's facilities and noted safety concerns at the facility.  Id. at 18-19.  Plaintiff used at least one of these letters in its deposition of Mr. Begich and Mr. Westphalen testified that he reviewed several loss control reports from Mr. Savona.  Id. at 19.  Plaintiff's general manager also spoke about Mr. Savona in his deposition.  Id.  The responses provided by the deponents and the content of the emails which have been provided to the Court indicate that  Plaintiff was alerted to the potential importance of Mr. Hake and Mr. Savona through discovery.  Finally, Plaintiff was aware of the best practices manual and specifically requested that Defendant produce the manual so while the exact content may have been unknown, its existence was not and should not have caused Plaintiff great surprise.  Id. at Exh. M at 93.

Second, since the Court finds that the identity of the witnesses should not have surprised Plaintiff, the Court also finds that Plaintiff could have asked the appropriate witnesses about the identified individuals and their role in the actions underlying this litigation and there should be no need to cure the surprise.  Similarly, Plaintiff knew the manual existed and certainly could have questioned the appropriate witnesses about the relevant content.  In addition, because the Court is concerned the Defendants waited to identify the witnesses until after Plaintiff had used all of its allowed depositions, the Court will permit Plaintiff to depose the two witnesses, Mr. Hake and Mr. Savona.  These additional depositions will cure any possible surprise.

Third, allowing the use of the witnesses and evidence is not likely to disrupt the trial in this matter as no trial date has been set.  The fourth factor also weighs in favor of not striking the witnesses.  Mr. Hake and Mr. Savona could provide important testimony relevant to the key issues in this case and the manual may shed some light on relevant and important issues.  The fifth and final factor weighs in favor of striking the witnesses as Defendant has not provided the Court with an explanation for its failure to timely disclose the witnesses and evidence.

In addition to the fact that four of the five factors support the inclusion of the witnesses, courts have interpreted FRCP 26 to mean that the duty to supplement does not apply if the additional or corrective information has otherwise "been made known to the other parties during the discovery process or in writing."  FRCP 26(e)(1)(A); see also Nuance Commc'ns, Inc. v. Abby Software House, et al., 2012 WL 2838431, *1 (N.D. Cal. July 10, 2012) (stating that "[s]upplementation, however, is not mandatory "if the additional or corrective information has [ ] been made known to the other parties during the discovery process or in writing …." (citing Vieste, LLC v. Hill Redwood Dev., 2011 WL 2181200, at *3 (N.D. Cal. June 3, 2011) ("The information regarding [the witnesses] thus 'was made known to [Plaintiffs] during the discovery process,' per Rule 26(e) (1), which discharged Defendants' duty to supplement their disclosures with respect to these two individuals.") and Coleman v. Keebler Co., 997 F.Supp. 1102, 1107 ( N.D. Ind. 1998); and Adv. Comm. Notes on 1993 Amendments to FRCP 26(e) (stating that "[t]he obligation to supplement disclosures and discovery responses applies whenever a party learns that its prior disclosures or responses are in some material respect incomplete or incorrect. There is, however, no obligation to provide supplemental or corrective information that has been otherwise made known to the parties in writing or during the discovery process, as when a witness not previously disclosed is identified during the taking of a deposition"). Accordingly, Defendant's failure to initially identify Mr. Hake and Mr. Savona and the late

supplementation was not in violation of FRCP 26.[9]  Plaintiff was made aware of the identity and potential  importance of Mr. Hake and Mr. Savona through the discovery process.  This is not an instance where each witnesses' name was only mentioned once or twice in a deposition without any context.  On the contrary, both men's names were mentioned repeatedly and discussed in the context of their important roles in this instant matter.[10]  In addition, Plaintiff was at least aware enough of the RMBP manual and its potential importance to request its production from Defendant.  Id. at Exh. M.  Accordingly, Plaintiff's request to strike Defendant's February 28, 2013 disclosures is **DENIED**.

Plaintiff's request to depose the newly identified witnesses, Mr. Savona and Mr. Hake, is **GRANTED**.  While the Court finds that Plaintiff knew or should have known about the role of each man in the conduct resulting in this litigation and therefore presumably evaluated the importance of each man's testimony in deciding whom to depose, Defendant's decision to identify each man as a person Defendant "may use to support its claims or defenses" likely would have impacted Plaintiff's decision about whom to depose.  If Defendant had initially identified the two men in Defendant's initial disclosures pursuant to Fed. R. Civ. Proc. 26(a)(1), Plaintiff likely would have chosen to depose the men as part of their authorized depositions but, even if they chose not to depose them, the identification of the men as potential witnesses certainly would have been an important factor in Plaintiff's deposition analysis.  Because Defendant failed to timely identify the witnesses and waited to do so until after Plaintiff had completed all of its allowed depositions, the Court

---

[9] "Even though FRCP 26 allows parties to identify trial witnesses through the discovery process, the Court notes that this is not good practice and parties should strive to always officially supplement earlier disclosures as soon as it becomes warranted." Nuance Commc'ns, Inc., 2012 WL 2838431 at *2 fn 3 (citing Schwarzer, Tashima & Wagstaffe, Cal. Prac. Guide: Fed. Civ. Pro. Before Trial, 11:1249 (The Rutter Group 2011)).  This admonition is especially applicable in a case like this one where Defendant failed to identify the potential trial witnesses until after Plaintiff had completed all of its permitted depositions.

[10] Plaintiff cites to Ollier v. Sweetwater Union High School Dist.,267 FRD 339, 343 (S.D. Cal. April 26, 2010) which states that "[c]ertainly the mere mention of a name in a deposition is insufficient to give notice to the opposing party that defendants intend to present that person at trial.  To suggest otherwise flies in the face of the requirements of Rule 26(a) and (e)," however, this is not the case here where both Mr. Hake and Mr. Savona's names appeared in multiple documents and were the subject of several questions and answers during at least four different depositions.

1    authorizes Plaintiff to depose both Mr. Hake and Mr. Savona.[11]

2    **VI.    Plaintiff's Request for Sanctions and Costs of Additional Depositions**

3         Plaintiff argues that Defendant should be "ordered to pay for the depositions

4    necessitated by its misconduct and bear the costs of this motion." MTC at 27.  In support,

5    Plaintiff argues that by submitting its Fed. R. Civ. P. 26 disclosures, Defendant improperly

6    certified that the disclosure was "complete and correct when made" and that Fed. R. Civ.

7    P. 26 authorizes sanctions for improper certification.  Id. at 28.  Plaintiff further argues that

8    Defendant should be sanctioned under the Court's inherent powers and Fed. R. Civ. P. 37

9    for failing to "respond to a request for inspection, and dilatory and partial compliance with

10   a request to produce."  Id.  Finally, Plaintiff argues that because the additional depositions

11   of Ms. Nwaturuocha and Mr. Begich are necessitated by Defendant's belated production of

12   documents, Defendant should have to "cover the costs of preparing for and conducting the

13   depositions."  Id. (citation omitted).  Plaintiff is seeking sanctions of $17,850.00 for the cost

14   of bringing this motion[12], $5,525.00 for the cost of preparing the reply[13], and $15,000 in

15   estimated deposition costs for Ms. Nwaturuocha and Mr. Begich[14].  Id. at 30; see also Reply

16   at 14.

17   _____

18   [11]The Court **DENIES** Plaintiff's request to conduct another Rule 30(b)(6) deposition relating to the
     RMBP manual.  Plaintiff has the opportunity to conduct four additional depositions or re-depositions and may

19   question any or all of those witnesses about the manual.  Given all of the facts of this case, the Court finds that
     the requested Rule 30(b)(6) deposition is not warranted.

20

21   [12]Plaintiff's counsel James H. Pyle states that Plaintiff incurred $16,250.00 in legal fees and he arrives
     at this number by adding the ten hours spent performing research to the fifty-five hours spent preparing and

22   editing the papers to be filed in support of the motion and multiplying that number (65) by his counsel's hourly
     fee of $250.00 which equals $16,250.  Decl. of James H. Pyle at 7.  Plaintiff's other counsel, Paul A. Hilding,
     states that he spent four hours reviewing and editing Plaintiff's MTC and his declaration.  Decl. of Paul A.

23   Hilding at 4. Four hours at $400.00 [Supp. Decl. of Paul A. Hilding] equals $1,600.00. $1,600 + $16,250 =
     $17,850.00.

24

25   [13]Mr. Hilding spent one hour reviewing and editing the Reply at a rate of $400.00 per hour.  Supp. Decl.
     of Paul A. Hilding.  Mr. Pyle spent 20.5 hours researching, preparing, and editing the Reply at a rate of $250.00

26   per hour.  Supp. Decl. Of James H. Pyle.  20.5 * $250 + $400 = $5,525.00

27   [14]$15,000.00 appears to be an estimation rather than a known cost.  Plaintiff states that Defendant
     "shall pay the costs for All Star's counsel to prepare for and take the depositions of Nationwide's custodian of

28   records, and to prepare for and re-depose Nwaturuocha and Begich, including travel costs, all of which are
     **estimated** to be $15,000."  MTC at 30 (emphasis added).

1   Defendant contends that it "has continually acted in good faith and thus [Plaintiff]

2   is not entitled to any fees for the costs of this motion or additional depositions."  Oppo. at

3   28.  Defendant notes that its discovery disclosures were not improperly certified and that

4   "there are simply no grounds for sanctions under FRCP 37" because Defendant has

5   complied with every discovery rule and court order in this litigation and Plaintiff has not

6   demonstrated otherwise.  Id.  In addition, Defendant contends that re-opening the

7   depositions of Ms. Nwaturuocha and Mr. Begich "is entirely unwarranted in this case" and

8   that if the Court permits the additional depositions, Plaintiffs should bear its own costs.  Id.

9   Pursuant to Federal Rule of Civil Procedure 37, "a party may move for an order

10   compelling disclosure or discovery."  Fed. R. Civ. P. 37(a)(1).  If the motion is granted, "the

11   court must, . . . require the party or deponent whose conduct necessitated the motion, the

12   party or attorney advising that conduct, or both to pay the movant's reasonable expenses

13   incurred in making the motion, including attorney's fees" unless "the movant filed the

14   motion before attempting in good faith to obtain the disclosure or discovery without court

15   action; . . . the opposing party's nondisclosure, response, or objection was substantially

16   justified; or . . . other circumstances make an award of expenses unjust."  Fed. R. Civ. P.

17   37(a)(5)(A)(i-iii).  If the motion is denied, the court "must, . . . require the movant, the

18   attorney filing the motion, or both to pay the party or deponent who opposed the motion

19   its reasonable expenses incurred in opposing the motion" unless "the motion was

20   substantially justified or other circumstances make an award of expenses unjust."  Fed. R.

21   Civ. P. 37(a)(5)(B).  Finally, if the motion is granted in part and denied in part, the court

22   may "apportion the reasonable expenses for the motion."  Fed. R. Civ. P. 37(a)(5)(C).

23   **A**.   **Sanctions**

24   Here, Plaintiff's motion to compel has been granted in part and denied in part so the

25   Court may "apportion the reasonable expenses for the motion."  Id.  In its deposition

26   requests, Plaintiff sought alternative remedies and the Court granted one or part of one of

27   the requested remedies and denied the others.  With regard to the document requests, the

28   Court granted approximately half of Plaintiff's requests.  Given these facts, the Court finds

it is appropriate to award Plaintiff 75% of its requested fees.  As set forth above, Plaintiff provided declarations indicating that it incurred $23,375 in attorneys' fees to prepare the instant motion and reply.  While Defendant opposed the imposition of monetary sanctions, Defendant did not challenge the validity of the hours or hourly rate.  Accordingly, the Court orders Defendant to pay Plaintiff $17,531.25, 75% of the requested fees.  The fees must be paid by **May 24, 2013** and Defendant must file a notice of payment by **May 29, 2013.**

### B.    Deposition Costs

The Court has ordered that Plaintiff may depose Mr. Hake and Mr. Savona based upon the late inclusion of these individuals in Defendant's Rule 26 disclosures and may re-depose Mr. Begich and Ms. Nwaturuocha based upon the late production of relevant documents.   Because deposition costs normally are covered by the party taking the deposition and the depositions of Mr. Hake and Mr. Savona are routine depositions, the Court declines to require Defendant to pay for the costs of these depositions.  However, because Defendant's late disclosure of documents caused the re-deposition of Mr. Begich and Ms. Nwaturuocha, the Court will require Defendant to pay the costs of those two re-depositions but the deposition of Ms. Nwaturuocha must take place via video conference as opposed to in person.  The Court declines to use Plaintiff's estimated deposition costs in imposing sanctions.  After the depositions are completed, Plaintiff must provide the relevant bills to Defendant and the parties must meet and confer about the appropriate costs.  If the parties are unable to agree on the appropriate deposition costs to be paid by Defendant, Plaintiff must file a motion to compel payment of sanctions by **June 28, 2013.**

### VII.   Defendant's Request for Rule 11 Sanctions

Defendant requests that the Court "impose Rule 11 sanctions against [Plaintiff's] counsel for his baseless allegations and misrepresentations to the Court."  Oppo at 29.  Defendant states that Plaintiff's accusation that Defendant "wrongfully withheld documents" is meritless and that he blatantly misrepresented to the Court that Mr. Savona and Mr. Hake were "newly discovered witnesses as of February 28, 2013."  Id. at 29-30.

In response, Plaintiff argues that Rule 11 requires "notice and a reasonable

opportunity to respond" and that the rule "explicitly does not apply to motions under Rules 26-37."  Reply at 12.

Rule 11 requires the imposition of sanctions when a motion is frivolous, legally unreasonable, or without factual foundation, or is brought for an improper purpose." Larez v. Holcomb, 16 F.3d 1513, 1522 (9th Cir. 1994) (quoting Conn v. Borjorquez, 967 F.2d 1418, 1420 (9th Cir. 1992). Here, Plaintiff's motion is not "frivolous, legally unreasonable, or without factual foundation" as evidence by the fact that the Court has granted portions of the motion. Additionally, as Plaintiff indicated, FRCP 11 "does not apply to disclosures and discovery requests, responses, objections, and motions under Rules 26 through 37." FRCP 11(d).  Accordingly, the Court **DENIES** Defendant's request for Rule 11 sanctions.

**VIII.  Revised Scheduling Order**

In light of the Court's Order, the Court finds it necessary to revise the current scheduling order.  The fact discovery deadline remains as previously set (and expired). However, in accordance with this Order, the following factual discovery is ordered to occur:

- Defendant must produce the 2010 claims file by **May 6, 2013**;
- Defendant must produce all additional documents required to be produced by this Order by **May 13, 2013**; and
- Plaintiff must complete the four authorized depositions or re-depositions by **May 31, 2013**.

In addition, the Court modifies the scheduling order as follows:

|                        | **Current Deadline**            | **New Deadline**        |
|------------------------|---------------------------------|-------------------------|
| Pretrial Motion Filings | April 18, 2013                 | June 24, 2013           |
| Pretrial Disclosures   | July 23, 2013                   | September 30, 2013      |
| Meet and Confer        | July 30, 2013                   | October 7, 2013         |
| Lodging of PC Order    | August 12, 2013                 | October 21, 2013        |
| Pretrial Conference    | August 19, 2013 at 11:00 a.m.   | October 28, 2013 at 11:00 a.m. |

Considering the new schedule and preferences of the Honorable M. James Lorenz,

Defendant is **ORDERED** to withdraw its pending Motion for Summary Judgment ("MSJ") and the May 28, 2013 hearing date is hereby **VACATED**.  The parties are **ORDERED** to jointly contact the chambers of Judge Lorenz at (619) 557-7669 to obtain a new hearing date for any MSJ or Cross MSJ.[15]  During the call, the parties must be prepared to coordinate the briefing schedule with Judge Lorenz's chambers.

Once the parties have received a briefing schedule from Judge Lorenz's chambers and are prepared to file their MSJs, the parties should jointly submit any exhibits that will be relied upon by both parties.  For example, the insurance policy (ies) at issue shall only be filed **once** as an exhibit and all references will be to that exhibit.  **The Court does not want any duplication of exhibits**.

The Court would also like to direct the parties' attention to Judge Lorenz's chamber's rules.  In particular, the section on Summary Judgment Motions and Cross-Motions which states that "[t]en days before the hearing date, the parties shall meet and confer in person to arrive at a joint statement of undisputed facts, which shall be filed no later than the reply brief" and that "[a]ny separate statements of disputed or undisputed facts will be rejected." http://www.casd.uscourts.gov/Rules/ChambersRules.aspx, The Honorable M. James Lorenz United States District Judge Standing Order for Civil Cases.

## CONCLUSION

The Court finds that:

- Plaintiff's motion is timely as to RFPs 1 and 2;

- Plaintiff's motion to compel responses to RFPs 37 & 38 is **GRANTED IN PART AND DENIED IN PART** and Defendant is **ORDERED** to provide Plaintiff with all documents that refer to Mr. Schiefler's honesty, credibility, or record keeping including but not limited to any performance reviews, customer complaints, or any supervisorial comments, criticisms, or reprimands during the January 1, 2010 - May 1, 2011 period.  Defendant

---

[15]Defendant shall take note that if it chooses to re-file its MSJ, it should **not** attach the amended complaint or complaint along with its request for judicial notice.

need not produce any documents in response to FRCP 38 as Plaintiff has deposed Mr. Schiefler regarding his termination and failed to establish a compelling need for this request.   The responsive documents must be produced by **May 13, 2013**;

- Plaintiff's request for the production of documents in response to RFPs 4 Nos. 42-44 is **GRANTED IN PART AND DENIED IN PART**.  Defendant shall produce its claims file for Plaintiff's 2010 fire claim by **May 6, 2013**. Defendant shall produce by **May 13, 2013**, any photographs, diagrams, maps, and other depictions of the three hay fields at issue in this case which were created after January 1, 2006;

- Plaintiff's request to re-depose Mr. Begich and Ms. Nwaturuocha is **GRANTED**.  However, both depositions **shall be limited to questions pertaining to the documents produced by Defendant in February 2013**.  The depositions must occur on or before **May 31, 2013** and if the person resides out of the San Diego area, the deposition must occur via videoconferencing;

- Plaintiff's request for a declaration from Defendant's custodian of records with "(1) a description of the search conducted detailing the persons involved and the date, time and scope of all searches undertaken to locate the responsive documents; (2) a statement identifying by Bates numbers when and where the documents were located by Nationwide, and when they were provided to counsel for production; and (3) a statement confirming with respect to each request that all responsive documents have been produced," and permission to depose the custodian(s) of records is **DENIED**;

- Plaintiff's request to strike Mr. Hake, Mr. Savona, and the RMBP manual is **DENIED**;

- Plaintiff's request to depose Mr. Hake and Mr. Savona is **GRANTED**. Plaintiff's request to depose a Rule 30(b)(6) witness on the RMBP manual is

12CV146-L(BLM)

1   **DENIED**.  The depositions must occur on or before **May 31, 2013**.

2   •   Plaintiff's request for sanctions is **GRANTED IN PART**.  Defendant is ordered

3       to pay Plaintiff $17,531.25 by **May 24, 2013** and Defendant must file a

4       notice of payment by **May 29, 2013**;

5   •   Plaintiff's request for the costs of the additional depositions is **GRANTED IN**

6       **PART**.  Defendant must pay the reasonable costs of the re-depositions of Mr.

7       Begich and Ms. Nwaturuocha.

8   •   Defendant's request for Rule 11 sanctions is **DENIED**.

9   **IT IS SO ORDERED**.

11  DATED:  May 3, 2013

13  BARBARA L. MAJOR
14  United States Magistrate Judge

12CV146-L(BLM)