1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                   SOUTHERN DISTRICT OF CALIFORNIA
10
11 ALL STAR SEED,                      )   Civil No. 12cv146 L (BLM)
                                       )
12              Plaintiff,             )   **ORDER DENYING DEFENDANT'S**
                                       )   **MOTION FOR SUMMARY**
13 v.                                  )   **JUDGMENT [doc. #63]; DENYING**
                                       )   **PLAINTIFF'S MOTION FOR**
14 NATIONWIDE AGRIBUSINESS             )   **PARTIAL SUMMARY JUDGMENT**
   INSURANCE COMPANY,                  )   **[doc. # 64]; DENYING MOTION TO**
15                                     )   **STRIKE AMENDED DOCUMENTS**
                Defendant.             )   **[doc. #95]**
16 _____     )

17          Defendant Nationwide Agribusiness Insurance Company ("Nationwide") moves for

18 summary judgment or alternatively for partial summary judgment on plaintiff's first, second and

19 third causes of action in the first amended complaint ("FAC"). All Star Seed moves for partial

20 summary judgment on its claim that Nationwide breached its duty to indemnify All Star for fire

21 losses in February and March 2011, and on Nationwide's coverage defenses. Nationwide has

22 also moved to strike new argument and evidence it alleges All Star inappropriately raised in it

23 reply brief in support of its motion for partial summary judgment. All the motions have been

24 fully briefed.

25 **A.      Legal Standard for Summary Judgment**

26          Summary adjudication is appropriate when "the pleadings, depositions, answers to

27 interrogatories, and admissions on file, together with affidavits, if any, show that there is no

28 genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." FED. R. CIV. P. 56(c). When "the moving party for summary judgment meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issues of material fact, the burden of production then shifts so that the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial." *See T.W. Elec. Service, Inc., v. Pac. Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)). The nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995) ("The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient.") (citing *Anderson*, 477 U.S. at 242, 252). Rather, the nonmoving party must "go beyond the pleadings" and by "the depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting FED. R. CIV. P. 56(e).

It is well settled that, "[w]hen the non-moving party relies only on its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact." *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993)(per curiam); *see also United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1061 (9th Cir. 2011); *Head v. Glacier Nw. Inc.*, 413 F.3d 1053, 1059 (9th Cir. 2005) (discussing the "longstanding precedent that conclusory declarations are insufficient to raise a question of material fact"). "Summary judgment requires facts, not simply unsupported denials or rank speculation." *McSherry v. City of Long Beach*, 584 F.3d 1129, 1138 (9th Cir. 2009); *see also Fed. Trade Comm'n v. Neovi, Inc.*, 604 F.3d 1150, 1159 (9th Cir. 2010); *Batz v. Am. Commercial Sec. Servs.*, 776 F. Supp. 2d 1087, 1097-98 (C.D. Cal. 2011). Moreover, the court need not find "a 'genuine issue' where the only evidence presented is 'uncorroborated and self serving' testimony." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002).

In considering evidence at the summary judgment stage, the Court does not make

credibility determinations or weigh conflicting evidence, and draws all inferences in the light most favorable to the non-moving party. *See TW Electric*, 8-9 F.2d at 630-31 (citing *Matsushita*, 475 U.S. 574).

On a motion for summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, so long as the requirements of Federal Rule of Civil Procedure 56 are met. *Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003) (citation omitted). Affidavits or declarations used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated. FED. R. CIV. P. 56(c)(4). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

**B.    Background**

All Star compresses and ships hay around the world. All Star grows some hay but obtains most of its hay from local farmers. The hay is then stored in three hay storage yards: the Main Hay Yard ("MHY"); the North Hay Yard ("NHY"); and the East Hay Yard ("EHY").

Nationwide issued a Commercial Output Program Policy to Plaintiff, policy number COP117377A, for the period May 1, 2010 through May 1, 2011. On February 16, 2011, a fire occurred in plaintiff's EHY affecting six haystacks ("2/16 fire"). Plaintiff reported the fire to Nationwide on February 17, 2011. On February 17, 2011, a second fire occurred in the EHY which affected 28 haystacks ("2/17 fire"). The 2/16 and 2/17 fires are collectively referred to as the "February fires." Nationwide assigned Brad Ganskow, a claim representative, to both claims.

After the two February fires, Ganskow met on-site with Rick Bush, plaintiff's ranch manager, on February 23, 2011. At that visit, Ganskow and Bush measured the spacing between the haystacks on the EHY and the measurements were copied onto a diagram provided by plaintiff. Both Ganskow and Bush signed the diagram. Ganskow took sixty-one measurements of the distances between haystacks, haystacks and railroad tracks, and haystacks and the road.

Although defendant treated each February fire separately, Ganskow sent a March 4, 2011

reservation of rights ("ROR") letter addressing both fires to plaintiff which advised that there were potential coverage compliance issues with the warranties in the Policy. A second ROR letter dated March 10, 2011, referenced only the 2/17 fire but the letter contained the same language as the March 4, 2011 ROR letter.

A third fire occurred on March 24, 2011 ("3/24 fire") on the NHY which affected all hay stacks in the open except for Stack No. L37. The 3/24 Fire also affected Stack No. 89 on the EHY, the only stack that had not burned in the prior February fires. Plaintiff reported the 3/24 fire loss on March 28, 2011. Nationwide also assigned Ganskow to this claim. On March 30, 2011, Ganskow and Bush again met on-site to measure the distance between the haystacks on the NHY. At that time, Ganskow took 45 measurements of the three rows of hay stacks on the NHY and the measurement were copied onto a diagram provided by plaintiff, and both Ganskow and Bush signed the diagram.

On April 1, 2011, Ganskow sent an ROR letter to plaintiff concerning the 3/24 fire and noted potential coverage issues with respect to compliance with the Storage Distance for baled hay in the open ("BHO") warranties in the Policy.

Ganskow sent an April 18, 2011 letter to plaintiff in which coverage for the February fires was denied. The basis of the denial was plaintiff's alleged breach of the clear space requirements contained in the Storage Distance Warranty of the Baled Hay In The Open Coverage Endorsement, No. COPC420 0907 ("COPC420") of the Policy. According to defendant, its decision to deny coverage was based on the relevant Policy provisions, terms, exclusions, and conditions, and the measurements taken, and the measurement diagram signed by Ganskow and Bush. Twenty-eight of the 61 measurements taken on February 23, 2011, were alleged to violate at least two of the warranties.

Also on April 18, 2011, Ganskow sent plaintiff a separate letter denying coverage for the BHO on the NHY affected by the 3/24 fire, based on the clear space requirements and the Increased Hazard Exclusion in the Policy. Nationwide did provide coverage, however, for Stack No. 89 on the EHY affected by the 3/24 fire. The denial of coverage letter indicated there were eight to nine violations of the warranties in the first row of haystacks; seven violations were

1   found in the second row; and seven to eight violations occurred in the third row. The primary

2   warranty violations Nationwide cited were (1) All Star's use of "double loaf stacking" (JE[1] 3, at

3   180-183); (2) All Star's storage of hay within 50 feet of fences and railroad tracks (JE 2, at 170;

4   JE 3, at 180-183); and (3) All Star's hay storage yards did not meet grouped exposure

5   requirements for 100 feet of separation between every four stacks. (JE 2, at 170; JE 3, at 180-

6   183) Nationwide also cited its "increased hazard" exclusion in the Policy as a basis for its

7   coverage denial. (JE 3, at 183.)

8        Although being denied coverage for the hay loss, plaintiff received Policy benefits for its

9   business personal property losses, business income/extra-expense losses, and trans-loading

10  losses on all three claims in the total amount for $4,509,849.71.

11       In its April 11, 2013 FAC, plaintiff alleges breach of contract, *i.e.*, breach of the duty to

12  indemnify; breach of the duty to indemnify – waiver; and breach of the duty to indemnify –

13  estoppel. [doc. #50]

14  **C.    2010 Policy**

15       Between May 1, 2005 through May 1, 2011, Nationwide continuously insured All Star.[2]

16  For the May 1, 2007 Policy, Nationwide changed to a new COP coverage form which eliminated

17  coverage for hay entirely. The omission of coverage for BHO was noted by Kirk Stewart, an

18  employee of Smith Kandal Insurance Agency, Nationwide's broker/agent,[3] who contacted Rose

19  Nwaturuocha, a Nationwide underwriter. (Dft's Exh. 70 at 960, Steward Depo.) The new COP

20  omitted the prior endorsement providing BHO coverage: COPC377 0306, "Grain, Hay and

21  Straw in the Open Coverage" ("COPC377"). The COPC377 endorsement did not contain any

22  storage distance warranties. Instead, the warranties associated with the COPC377 endorsement

23  were contained in a separate endorsement, COPC383 1006, "Baled Hay Distance Warranty"

24

25      [1]     The parties provided a Compendium of Joint Exhibits in Support of the Parties'
    Respective Motions for Summary Judgment. [doc. #63-3] These exhibits will be designated as
26  "JE" throughout this Order.

27      [2]     Nationwide also provided insurance for plaintiff between 2001-2004, but not for
    2004-05.

28      [3]     An an employee of Smith Kandal Insurance Agency, Kirk Stewart's role as
    "agent" for plaintiff or defendant is discussed below.

("COPC383").

According to Nationwide, Stewart requested that the COPC377 endorsement be included back into the 2007-08 Policy, and the COPC383 endorsement either be eliminated or modified to change the limits of plaintiff's exposure. Ultimately, in October 2007,Nationwide created an endorsement that was an incorporation of the COPC377 and revised COPC383: the COPC420 0907, "Baled Hay in the Open Coverage." (Hake Decl. ¶ 34.) The COPC420 endorsement contained "Storage Distance Warranties":

> The insured agrees that the following conditions will be maintained for all baled hay:
> 1.      OPEN STORAGE
>
> a. "We" will not pay more than $150,000 per any one stack.
> b. A minimum of 50 feet of clear space must be maintained between stacks and property lines or fences.
> c. A minimum of 50 feet of clear space must be maintained between each stack.
> d. A minimum of 50 feet of clear space must be maintained between stacks and any building, public road and railroads.
> e. A minimum of 100 feet of clear space must be maintained between each $600,000 exposure (four stacks.)
> f. A minimum of 300 feet of clear space must be maintained between each hay storage yard
> g. "We" will not pay more than $1,000,000 for loss to hay in any one storage yard described below.
>
> Main Hay yard – Located at main processing facility at 2015 Silsbee Road, El Centro CA.
>
> North Hay Yard – Located across the RR tracks from Main Hay Yard. Fence line is 200 feet North of fence line of Main Hay Yard.
>
> East Hay Yard – Located ¼ mile east of the North Hay Yard.
>
> *  If the Storage Distance Warranties are not maintained, the coverage provided by this endorsement will be voided.

(JE 1, at 74.)

On October 4, 2007, underwriter "Nwaturuocha requested the new COPC420 Endorsement be endorsed to All Star's policy effective May 1, 2007, the date of the policy's inception." (Hake Decl. §41.) Nationwide renewed coverage for All Star under substantially the same terms in 2008, 2009, and 2010. The 2010 Policy included an exclusion for "Increased Hazard": "'We' do not pay for loss occurring while the hazard has been materially increased by any means within 'your' knowledge or 'your' control." (JE 1, at 21.)

The 2010 Policy at issue included both the Baled Hay Storage Distance Warranty endorsements: the COPC 420 and the COPC383.  (Jt. Exh. 1, at 72-74.)

The COPC383 and COPC420 Storage Distance Warranties are provided:

**BALED HAY STORAGE DISTANCE WARRANTY**

|    | COPC383 | COPC420 |
|----|---------|---------|
| 1a | Stock limit per stack will not exceed $100,000. | "We" will not pay more than $150,000 per any one stack. |
| 1b | A minimum of 50 feet of clear space must be maintained between stacks and property lines or fences | A minimum of 50 feet of clear space must be maintained between stacks and property lines or fences. |
| 1c | A minimum of 50 feet of clear space must be maintained between each stack | A minimum of 50 feet of clear space must be maintained between each stack. |
| 1d | A minimum of 50 feet of clear space must be maintained between stacks and any building, public road and railroads. | A minimum of 50 feet of clear space must be maintained between stacks and any building, public road and railroads. |
| 1e | A minimum of 100 feet of clear space must be maintained between each $400,000 exposure (four stacks.) | A minimum of 100 feet of clear space must be maintained between each $600,000 exposure (four stacks.) |
| 1f | A minimum of 300 feet of clear space must be maintained between each $1,000,000 exposure. | A minimum of 300 feet of clear space must be maintained between each hay storage yard. |
| 1g | The exposure of hay in the open will not exceed $1,000,000. | "We" will not pay more than $1,000,000 for loss to hay in any one storage yard described below. |
|    |  | *If the Storage Distance Warranties are not maintained, the coverage provided by this endorsement will be voided* |

## D.    General Construction of Policy Language

"Where a case turns on the interpretation of an insurance policy, the court reviews the policy's terms under the ordinary rules of contract interpretation." *Berendes v. Farmers Insurance Exchange*, 221 Cal. App.4th 571, 577 (2013) (quoting *Bank of the West v. Superior Court* 2 Cal.4th 1254, 1264 (1992)). If the policy language is clear and explicit, it governs. *Id.* If the policy terms are ambiguous or uncertain, the court must attempt to determine whether coverage is consistent with the insured's objectively reasonable expectations. *Id.* at 1265. If this rule does not resolve the ambiguity, it must be resolved against the insurer. *Id.*

"In determining whether an ambiguity exists, the words of the policy must be interpreted

according to the plain meaning that a layperson would ordinarily attach to them." *Berendes*, 221
Cal. App.4th at 577 (quoting *Reserve Insurance Co. v. Pisciotta*., 30 Cal.3d 800, 807 (1982).
"An insurance policy provision is ambiguous when it is capable of two or more constructions,
both of which are reasonable." *Jordan  v. Allstate Ins. Co.*, 116 Cal. App. 4th 1206, 1214 (2004).
"Courts will not adopt a strained or absurd interpretation in order to create an ambiguity where
none exists." *Berendes*, 221 Cal.App.4th at 577-578 (citing *Pisciotta*, 30 Cal.3d at 807)

"Moreover, the language must be interpreted in the context of the policy as a whole, and
in light of the circumstances of the case. It cannot be deemed to be ambiguous in the abstract."
*Id.* at 578 (citing *Bank of the West*, 2 Cal.4th at 1265). "[T]he proper question is whether the
particular phrase is ambiguous in "the context of this policy and the circumstances of this case."
*Jordan*, 116 Cal. App.4th at 1214. Even apparently clear insurance policy language may be
found to be ambiguous when read in the context of the policy and the circumstances of the case.
*Employers Reinsurance Co. v. Superior Court*, 161 Cal. App.4th 906, 919 (2008).

"If policy language is ambiguous, an interpretation in favor of coverage is reasonable
only if it is consistent with the insured's objectively reasonable expectations." *Id.* at 919-920; *see
also Montrose Chemical Corp. v. Admiral Ins. Co.,* 10 Cal.4th 645, 666–667 (1995); *Minkler v.
Safeco Ins. Co. of America*, 49 Cal. 4th 315, 324 (2010), opinion after certified question
answered, 399 Fed. Appx. 230 (9th Cir. 2010) (if insurance contract terms are ambiguous, *i.e.*,
susceptible of more than one reasonable interpretation, courts interpret them to protect the
objectively reasonable expectations of the insured).

"Policy exclusions are strictly construed." *Jordan*, 116 Cal. App.4th at 1214. "Exceptions
to exclusions on the other hand, are broadly construed in favor of the insured." *Id.* (citing *Aydin
Corp. v. First State Ins. Co*., 18 Cal.4th 1183, 1192 (1998).  As a result, '"an insurer cannot
escape its basic duty to insure by means of an exclusionary clause that is unclear. . . "the burden
rests upon the insurer to phrase exceptions and exclusions in clear and unmistakable language."
*MacKinnon v. Truck Ins. Exchange*, 31 Cal.4th 635, 648 (2003) (quoting *State Farm Mut. Auto.
Ins. Co. v. Jacober,* 10 Cal.3d 193, 201–202 (1973). "The exclusionary clause 'must be
conspicuous, plain and clear.'" *Id.* (quoting *Jacober*, 10 Cal. 3d at 202.) "This rule applies with

1  particular force when the coverage portion of the insurance policy would lead an insured to

2  reasonably expect coverage for the claim purportedly excluded." *Id.*

3        Extrinsic evidence may be admissible to support an interpretation of a contract to which it

4  is reasonably susceptible so long as the evidence speaks to the parties' understanding at the time

5  of contracting. *Employers Reinsurance,* 161 Cal. App.4th at 920.  "As with all extrinsic

6  evidence, course of performance evidence can be used not only to interpret an ambiguity, but

7  also to reveal one in language otherwise thought to be clear."  *Id.* "Not only is a course of

8  performance relevant 'in ascertaining the meaning of the parties' agreement, it may 'supplement

9  or qualify the terms of the agreement, or 'show a waiver or modification of any term inconsistent

10  with the course of performance.'" *Id.* at 920-921 (citations omitted.).  "'[W]hen a contract is

11  ambiguous, a construction given to it by the acts and conduct of the parties with knowledge of its

12  terms, before any controversy has arisen as to its meaning, is entitled to great weight, and will,

13  when reasonable, be adopted and enforced by the court. The reason underlying the rule is that it

14  is the duty of the court to give effect to the intention of the parties where it is not wholly at

15  variance with the correct legal interpretation of the terms of the contract, and a practical

16  construction placed by the parties upon the instrument is the best evidence of their intention.'"

17  *Id.*, 161 Cal. App.4th at 921 (quoting *Universal Sales Corp. v. Cal. etc. Mfg. Co.,* 20 Cal.2d 751,

18  761–762 (1942). The conduct of the parties after execution of the contract and before any

19  controversy has arisen as to its effect affords the most reliable evidence of the parties' intention.

20  *Id.* (quoting *Kennecott Corp. v. Union Oil Co.*, 196 Cal. App.3d 1179, 1189 (1987) .

21  **E.**    **Defendant's Motion for Summary Judgment**

22        Nationwide contends it is entitled to summary judgment on plaintiff's claim for breach of

23  contract, *i.e.,* breach of duty to indemnify, for the following reasons: (1) strict compliance with

24  warranties contained in the Policy is required as a condition precedent to coverage under the

25  Policy; (2) failure to comply with the warranties contained in the Policy expressly voids

26  coverage for the baled hay in the open; (3) coverage under the Policy is voided because plaintiff

27  failed to strictly comply with the warranties contained in the Policy; (4) waiver and estoppel are

28  not applicable to promissory warranties as a matter of law; and (5) coverage under the Policy is

1    not illusory.

2         **1.     Compliance with Warranties**

3         Defendant argues because plaintiff failed to strictly comply with the Storage Distance

4    Warranties in COPC420, there is no coverage under the Policy for hay losses and therefore,

5    there is no breach of the duty to indemnify.

6         California Insurance Code §445 provides "[a] statement in a policy, which imports that

7    there is an intention to do or not to do a thing which materially affects the risk, is a warranty that

8    such act or omission will take place." Further, under Insurance Code §444, "[a] warranty may

9    relate to the past, the present, the future, or to any or all of these." Generally, compliance with

10   terms of a warranty is a condition precedent to recovery on the policy. *Chase v. National Indem.*

11   *Co.*, 129 Cal. App.2d 853 (1954).

12        Defendant points to The Baled Hay Storage Distance Warranty in the COPC420

13   endorsement which provides: "The insured agrees that the following conditions will be

14   maintained for all baled hay…." Therefore, Plaintiff promised to maintain the clear space in the

15   minimum distances set forth in the COPC420 endorsement during the term of the Policy and

16   such maintenance was a condition precedent to coverage under the Policy. (Dft's MSJ Ps&As at

17   17.)

18        Arguing that because the undisputed evidence demonstrates that plaintiff did not maintain

19   the minimum storage distances, there is no genuine issue as to whether Plaintiff was in strict

20   compliance with the warranties at the time of the fires. As evidence of plaintiff's lack of

21   compliance, defendant notes the post February fires measurements taken by Nationwide's claim

22   representative, Ganskow and plaintiff's ranch manger, Rick Bush, that was signed off by both

23   Ganskow and Bush. Defendant contends the diagrams with the measurements indicated show

24   that plaintiff was not in compliance with more than one of the warranties at the time of the fires,

25   *i.e.,* warranties 1.b, 1.c, 1.d, and 1.e. (Ganskow Decl., ¶¶7,12,15-16, Exhs. 2 & 6, Jt. Exhs. 2-3.)

26   In his declaration, Ganskow does not provide any information about how the measurements were

27   taken, *i.e.*, what measuring instrument, the condition of the ground, pads, or surrounding areas.

28   However, in his declaration, Bush states that post fires, the "damage to the pads and surrounding

1  areas in the yards made it impossible to make precise post-fire estimates of the stack locations."

2  (Plf's Opp. to dft's MSJ, Attachment 2, Bush Decl. ¶9.) Thus, plaintiff has come forward with

3  admissible evidence to dispute a material issue of fact as to the storage distances between stacks

4  at the time of the fires.

5       Defendant further contends that Bush unambiguously admitted that prior to the February

6  Fires he knew All Star's haystacks were *supposed* to be 100 feet apart but was aware that some

7  of them did not in fact meet that requirement. (Dft's Exh. 8 at 69, Hines Decl., ¶3). Of course,

8  the issue is not plaintiff's alleged lack of compliance with the warranties at earlier times but

9  rather at the time of the fires.

10       Because there is a genuine issue of fact material to the measurements between stacks at

11  the time of all three fires, defendant is not entitled to summary judgment. Nevertheless, the

12  Court will further consider the situation where even if the facts of noncompliance were

13  undisputed, whether the Policy was ambiguous so as to allow extrinsic evidence that defendant

14  waived strict compliance with the Storage Distance Warranty.

15       Plaintiff contends the Storage Distance Warranties and the Policy are confusing and in

16  particular, the COPC420 endorsement ambiguous because the form mixes warranted items with

17  non-warranted items; the language of the form reveals an inherent violation on its face; the

18  phrasing of the voiding clause indicates that Nationwide was required to take action to void

19  coverage; the inclusion of and language in the 383 form causes confusion with the insured's

20  objectively reasonable expectations; and the forfeiture clause is phrased in the future tense, "will

21  be voided", and in the present tense "are not maintained" making determination of when

22  defendant could cancel coverage and how coverage could be cancelled. (Plt's MPSJ Ps&As at

23  20.)

24       In support of its contention that the COPC420 Storage Distance Warranties are

25  ambiguous, plaintiff notes provision 1f which states: "A **minimum of 300 feet** of clear space

26  must be maintained **between each hay storage yard**." (Emph. added.) Yet just sentences below

27  this provision, the COPC420 endorsement describes the following: North Hay Yard – located

28  across the railroad track from Main Hay Yard. Fence line is **200 feet North of fence line on**

1    **Main Hay Yard**." Accordingly, a violation expressly exists on the face of the Warranty.

2          Although defendant correctly notes that it did not deny coverage for the 2011 fires on the

3    basis that the storage yards were not 300 feet apart, it is an express provision of the Warranty

4    that could provide the basis for defendant to declare a violation of the Storage Distance

5    Warranty. Further, in its briefing, defendant contends that the distance provision between storage

6    yards is language that must be construed "in the context of the Policy as a whole and the

7    circumstances of this case." Defendant therefore argues that the "hay stack to hay stack"

8    distance is the "real" interpretation of the COPC420 warranty rather than the distance between

9    hay storage yards, even though that interpretation is inconsistent with the explicit policy

10   language. (Dft's MSJ Ps&As at 10, and Opp. to plf's MPSJ at 17.) What defendant has pointed

11   out is that this provision, at a minimum, is uncertain and ambiguous, *i.e.,* it is susceptible of

12   more than one reasonable interpretation.

13         Plaintiff asserts another ambiguity in the COPC420 Warranty – the lack of a definition for

14   "double stacking". Defendant acknowledges that the Policy does not mention or define "double

15   loafs" or "double stacks." (Dft's Opp. to PMSJ at 17.) Under the COPC420 endorsement,

16   Plaintiff agreed it would maintain a minimum of 50 feet of clear space between "each stack."

17   But rather than define "stack" by size, volume or configuration in the Policy, "stack" appears to

18   be based on value, *i.e.,* "[W]e will not pay more than $150,000 per any one stack."[4] It is

19   undisputed that plaintiff had been using what it called double loaf stacking since at least 2008.

20         Although the testimony by Nationwide's underwriter, agent, or employees cannot

21   interpret a contract or its terms, such testimony can be admissible to show ambiguity. *Employers*

22   *Reinsurance*, 161 Cal App.4th at 920 ("Extrinsic evidence can be offered not only where it is

23   obvious that a contract term is ambiguous, but also to expose a latent ambiguity.").

24         At his deposition, Nationwide Loss Control representative, Begich, testified:

25         Q.     I don't see mention of double loaf stacks as a violation in 1 through 7. Can

26                you help me out?

27

28   ――――――――――――――――
            [4]      The parties engage in a dispute about whether the COPC420 1a and 1g provisions
     are warranties. The Court need not make this determination at this time.

1    `           A.    Double loaf stacks aren't a violation.

2    (Plt's Exh 3-67, Begich Depo.)

3          At his deposition, Michael Ayslworth, designated as the person most knowledgeable on

4    behalf of Nationwide regarding the underwriting for the 2010-2011 property insurance policy,

5    testified as follows:.

6              Q.    And in fact, there's a picture at page 5189 of loafs stacked two side by side.

7              A.    . . . I'm familiar with what a double stack is.

8              Q.    So your understanding is that double loaf stacks are stacks of hay that are

9                    right next to each other or very close, correct?

10             A.    I would consider a double loaf stack to be one stack.

11             Q.    And did you at the time that you saw this report have any concern about

12                   whether the double loaf stacking technique was a violation of the 50-foot

13                   storage distance warranty?

14       . . .

15             A.    . . . I would consider a double stack to be one stack. So as long as what I

16                   consider to be one stack was 50-foot away from what I would consider to be

17                   another stack, then it would be – I wouldn't have a problem with that.

18   (Plf's Exh. 18–219 and 242, Michael Ayslworth's Depo.)

19         Because Nationwide did not define "stack" in terms other than what it was willing to pay

20   per stack in the COPC420 Warranties, and both a Nationwide Loss Control representative and

21   the underwriter on the 2010 Policy considered a double-stacked loaf as a single stack, an

22   objectively reasonable person in the position of the insured, All Star, could well be uncertain as

23   to whether double stacking would be a violation of the storage distance warranty, thus making

24   the term ambiguous. An yet, Nationwide denied coverage the practice of having double stacks:

25              Please note that it is Nationwide Agribusiness' position that there was less than
                one foot between Stack No. L28A and Stack No. L28, Stack No. L29A and Stack
26              No. L29, L30A and L30, L31A and L31, L17A and L17 and L18A and L18,
                irrespective of the lack of measurements between such stack, because the stacks
27              were placed adjacent to each other with virtually no clear space between them.

28   (Jt. Exh. 3-176.)

12cv146

1    The inclusion of both the COPC383 and the COPC420 in the 2010 Policy also can be

2  seen as confusing given the distinctions between the endorsements.

3    Although plaintiff contends other terms in the COPC420 endorsement are ambiguous, the

4  Court need not inquire further at present. The COPC420 Warranties in the Policy contain at least

5  two material terms or provisions that are ambiguous in the context of this Policy and the

6  circumstances of this case when viewed through the eyes of a reasonable person in the position

7  of the insured. Because the warranties are exclusionary, the insurer "cannot escape its basic duty

8  to insure by means of an exclusionary clause that is unclear." *MacKinnon*, 31 Cal.4th at 648.

9    **2.    Negotiating the COPC420 Warranties**

10    Defendant contends that the general rule that exclusions are construed narrowly against

11  the insurer does not apply in the present case because plaintiff All State's "agent", Kirk Stewart

12  of Smith Kandal Insurance Agency, participated in the drafting of the COPC420 endorsement. In

13  other words, defendant asserts the terms of this policy, specifically the COPC420 endorsement,

14  were negotiated between Nationwide and All State through its agent, Stewart, and the language

15  in contention was the product of joint drafting thereby avoiding the rule that requires ambiguous

16  policy provisions to be interpreted against the insurer. *See Garcia v. Truck Ins. Exchange*,

17  36 Cal.3d 426, 441 (1984).

18    Kirk Stewart was an employee of Smith Kandal Insurance Agency. The Court takes

19  Judicial Notice that the Smith Kandal Insurance Agency has on file with the California

20  Department of Insurance a company appointment from Nationwide Agribusiness Insurance

21  Company, as a "Property Broker-Agent," effective as of September 8, 2000. Smith Kandal was

22  the broker-agent Nationwide used to issue the Insurance Policy to All Star.  (Plf's Mtn Ps&As at

23  6.) Nevertheless, defendant contends "Plaintiff falsely refers to Stewart as NW's agent." (Dft's

24  Opp. at 4.) Defendant relies on the use of the word "agent" by a lay witness in response to

25  questioning by defendant's attorney in a deposition. The colloquial use of the term "agent" is not

26  evidence of an admission that Smith Kendal's employee, Kirk Stewart, was actually plaintiff's

27  legal agent.

28    Nationwide's underwriter Nwaturuocha's own statements demonstrate the use of the term

1  "agent" colloquially. In her declaration, Nwaturuocha states at ¶8, "Kirk Stewart of Smith

2  Kandal Insurance was the agent representing All Star in April of 2007 " but she also states that

3  "Smith Kandal was my agent." (Plf's Reply, Exh. 15, at 85). In her deposition, Nwaturuocha

4  testified:

5                        Q.     Do you recall who Kirk Stewart was?

6                        A.     Yes. He was the – he represented Smith-Kandal Insurance.

7                        Q.     And he was the broker for All Star?

8                        A.     Yes.

9  (Plf's Exh. 4-100, Nwaturuocha Depo.)

10        Further, Nationwide's Director of Underwriting Hake testified that Nationwide "viewed

11  agents as agents of the company [Nationwide]." (Plf's Reply, Exh. 17 at 319, Exh. 16 at 313-

12  314, 316.) Hake described its agents, like Smith Kandal, as independent agents, a term that refers

13  to an agent that is authorized to bind the insurer but who also may transact business for several

14  different carriers.

15        Insurance Code  § 1731, "Licensee Deemed Agent" states that when an insurance broker

16  receives a company appointment as a "broker-agent" from an insurer, the broker is "deemed to

17  be acting as an insurance agent. . ." for all transactions placed with that insurer. INS. CODE §

18  1731 (2013). Under the Insurance Code, "agent" means someone representing the insurer, not

19  the insured. INS. CODE § 31 (2013).

20        Nationwide's company appointment of Smith Kandal and under the express language of

21  the Insurance Code, Smith Kandal was Nationwide's agent, rather than All Star's agent. INS.

22  CODE § 1731 (2013); *Loehr v. Great Republic Ins. Co.*, 226 Cal. App. 3d 727, 734 (1990).

23  Nationwide's assertions that Smith Kandal's employee, Kirk Stewart, was All Star's "agent"

24  rather than Nationwide's, and that All Star thus "negotiated" the provisions of the 420 form is

25  unsupported by any admissible evidence. Instead, Nationwide's evidence is based on improper

26  legal conclusions.

27        Thus, the Court concludes that All Star did not negotiate or write or participate in the

28  writing of the COPC420 endorsement and therefore, ambiguities in this Policy must be strictly

1   construed against the Nationwide.

2       **3.    Conclusion**

3       Defendant bases its motion for summary judgment on plaintiff's failure to strictly comply

4   with the warranties thus voiding coverage under the Policy. However, because the Court finds

5   that there is a disputed issue of material fact as to the distances between the stacks at the time of

6   the fires, and that certain warranty terms are ambiguous within the context of the Policy and the

7   circumstances of the case, defendant's motion for summary judgment based on plaintiff's failure

8   to strictly comply with the Storage Distance Warranties will be denied.

9   **F.    Plaintiff's Motion for Partial Summary Judgment**

10       In its motion for partial summary judgment, All Star contends defendant breached its duty

11   to indemnify All Star for its hay losses by fire suffered in February and March 2011, and

12   Nationwide's coverage defenses are without merits because it (1) has waived compliance with

13   its Storage Distance Warranties; and (2) cannot meet its burden to prove that its Increased

14   Hazard exclusion applies.

15       **1.    Scope of Coverage**

16       "The burden is on an insured to establish that the occurrence forming the basis of its

17   claim is within the basic scope of insurance coverage. And, once an insured has made this

18   showing, the burden is on the insurer to prove the claim is specifically excluded." *Aydin Corp. v.*

19   *First State Ins., Co.,* 18 Cal. 4th 1183, 1188 (1998).

20       The Policy at issue provides for baled hay in the open as property covered. (JE 1 at 73.)

21   Fire by arson is not an excluded peril. (JE 1 at 18-21, 54.). Therefore, All Star's hay losses are a

22   covered claim. As discussed above, Nationwide argues that its Storage Distance Warranties are

23   enforceable and because plaintiff failed to strictly comply with those Warranties, All Star has no

24   coverage under the Policy. Plaintiff seeks summary judgment arguing that Nationwide has

25   waived compliance with the Storage Distance Warranties.

26       **2.    Waiver**

27       "Generally, in the insurance context, waiver requires the intentional relinquishment of a

28   known right." *Colony Ins. Co. v. Crusader Ins. Co.,*188 Cal. App.4th 743, 753 (Cal. Ct. App.

1   2010). "Waiver may also apply where a party acts in a manner inconsistent with the intent to

2   enforce a right." *Id.*; *see also Waller v. Truck Ins. Exchange, Inc.*, 11 Cal.4th 1, 33

3   (1995)("California courts will find waiver when a party intentionally relinquishes a right or

4   when that party's acts are so inconsistent with an intent to enforce the right as to induce a

5   reasonable belief that such right has been relinquished.")

6        Plaintiff bases its waiver argument on evidence of defendant's knowledge over many

7   years that plaintiff's hay yards allegedly did not strictly comply with the Storage Distance

8   Warranties, that at the time it issued the 2010 Policy, Nationwide knew the storage yards were

9   allegedly in violation of the COPC420 Warranties, and yet neither acted on that knowledge nor

10   advised plaintiff of its intent to require strict compliance with the Warranties. In other words,

11   defendant's acts were "so inconsistent with an intent to enforce the right as to induce a

12   reasonable belief that such right has been relinquished." *Waller*, 11 Cal.4th at 33.

13        Defendant contends, however, that plaintiff has not show by clear and convincing

14   evidence that it intended to relinquish its right to require strict compliance with the warranties,

15   waiver is a question of fact, and at a minimum, a genuine issue of fact exists as to waiver.

16   Further, because the Policy is unambiguous, parol evidence or course of dealing evidence cannot

17   be introduced. Because the Court has already found that the COPC420 Warranty is ambiguous,

18   other evidence may be introduced to show waiver.

19            **a.**     **Loss Control**

20        All Star contends that defendant obtained knowledge of plaintiff's alleged noncompliance

21   by way of defendant's Loss Control inspections. Nationwide regularly sent representatives from

22   its Loss Control department as a service that Nationwide provided to its insureds to let them

23   know about hazards or safety concerns regarding their operations. (Plf's Exh. 3-55, Begich

24   Depo.)  If an issue was noted at a LC inspection, a LC representative would send a letter to

25   plaintiff identifying the issue, ask plaintiff to sign the letter, send it back within a certain time

26   frame, and take corrective action. (Plf's Exh 7 at 114-115.) If there were no safety or hazard

27   issues identified during the inspection, the letter would indicate that there were no

28   recommendations ("no recs"). (Plf's Exh. 3-59, Begich Depo.)

1    Nationwide argues that its Loss Control department was not contractually obligated to

2 inspect plaintiff's property and storage habits to determine compliance with the warranties

3 contained in the policy. Although not required contractually, Nationwide regularly provided

4 Loss Control service to All Star. LC inspectors inspected All Star's facilities a total of six times

5 in the four years from the date the 2007 Policy commenced until the fires. (Plf's Exh. 7 at 122-

6 127; Exh. 9; Exh. Q, p. 9.)  Defendant's Loss Control Manager Savona testified:

7        Q.    What is your understanding of the purpose of loss control at Nationwide?

8              . . .

9        A.    Basically the eyes and ears for underwriting and the company,

10             preinspecting prospective – clients, and then on occasion going to existing

11             accounts to basically review their operation, make sure everything is in

12             order to avoid losses.

13 (Plf's Exh. 6-113, Savona Depo.)

14    Nationwide also argues that its Loss Control inspections were not intended to monitor

15 compliance with policy-specific warranties. But it appears that Nationwide did monitor All

16 Star's compliance with the Storage Distance Warranties as Nationwide as demonstrated in

17 response to the omission of the COPC377 endorsement in the 2007 Policy. Underwriter

18 Nwaturuocha arranged to have a LC representative visit plaintiff's facilities "to confirm the

19 distances between stacks as stated in the Warranty Form." (Plf's Exh. 8-128.) LC representative

20 Begich conducted a site visit on September 6,2007, and prepared an internal "Note to File."

21 (Begich Decl. ¶¶ 18-21; Plf's Exh. 9-129.) Begich stated the spacing between all the stacks on

22 the MHY was "about 90-100 feet;" with respect to the NHY, there were "90 to 100 ft." between

23 the rows and stacks, and he indicated the same on diagrams. (Plf's Exh. 9-130, 131.) Based on

24 Begich's internal report, plaintiff was not in strict compliance with the COPC383 Storage

25 Distance Warranties; however, Nationwide did not share this information with All Star.

26    On September 12, 2007, Nationwide's Commercial Underwriting Director, Ken Hake,

27 requested that Stewart point out which provisions of the COPC383 were not being met, as well

28 as the actual distances existing at the time:

> Kirk – I am attaching a copy of the Baled hay Storage Distance Warranty. Rose mentioned that you indicated to her that the new East yard didn't meet the provisions on the warranty. . . I need you to indicate which provisions are not being met and also what the actual situation is. By that I mean, if a distance is not being met, what is the actual distance now. Also, indicate if there are similar issues at the other two yards.

(Dft's Exh. 12-154, 155.)

After Stewart's September 13, 2007 responsive email to Hake indicating that All Star was complying the Distance Warranties (Dft's Exh. 28-532), Hake continued to engage with Nationwide's attorney to create a single manuscript endorsement to the All Star policy that add coverage for BHO and revised the storage distance warranty terms from the COPC383 endorsement. Begich's Note to File, made at Hake's direction, pointing out All Star's noncompliance with the policy-specific storage warranties is evidence that compliance was monitored by LC representatives and was influential for defendant's underwriting decision making.

Plaintiff provides another example that Nationwide used Loss Control inspections to monitor compliance with policy-specific warranties. In January 2008, Hake emailed LC representative Begich writing:

> I drove by the hay yards last Thursday and my observation was that the main yard was an absolute wreck. Spacing was little to nonexistent. Stacks were falling over, etc. etc.
> The agent indicated that you had an appointment planned in the very near future **so rather than sending notice of cancellation immediately**, I am waiting to receive your assessment of the situation as well.
> This is very important and I look forward to discussing with you.

(Plf's Exh. 13-160.)

After his site visit, Begich prepared an internal report dated January 30, 2008. (Plf's Exh. 14.) The Report commented on a "second lot": Begich noted that the "yard is set up with 16 double loaf stacks in each row with three rows. . . . 4. The stacking does not meet our 100-foot clearance requirements for the $400,000 grouped exposure. 5. The stacking does not meet our 300-foot clearance requirements for the $1,000,000 grouped exposure." (Plf's Exh. 14-169.) Notwithstanding this LC Report, Begich's February 8, 2008 letter to All Star stated "the recent survey of your facilities revealed that you have a well-organized operation." No mention was

1    made to plaintiff that its BHO was not in strict compliance with the storage distance warranties

2    in COPC420 endorsement, that strict compliance was expected, or that the Policy would be

3    cancelled if strict compliance was not followed.

4         This evidence strongly suggests that the LC inspection could have resulted cancellation of

5    coverage under the Policy at issue. Defendant's knowledge of plaintiff's alleged violation of the

6    warranties did not cause Nationwide to take action to advise plaintiff that strict compliance with

7    the distance warranties was required to avoid forfeiting coverage or to cancel the Policy. This

8    evidence provides a basis for finding that defendant's action was "so inconsistent with an intent

9    to enforce the right as to induce a reasonable belief that such right has been relinquished."

10   *Colony Ins. Co.*, 188 Cal. App.4th at 753.

11              **b.    Alleged Warranty Violations at the Inception of the 2010 Policy**

12        Defendant contends plaintiff's waiver argument is also premised on its purported

13   knowledge in 2001, 2007, 2008 and 2009 that plaintiff's storage yards did not comply with the

14   distance warranties in the Policy and there is no evidence presented that defendant knew at the

15   inception of the 2010 Policy that the distance warranties were where not in compliance.

16   However, plaintiff is providing evidence of course of performance, *i.e.,* that defendant's past

17   knowledge of All Star's alleged long term lack of compliance with the distance warranties and

18   defendant's consistent disregard for plaintiff's lack of compliance with the warranties prior to

19   the 2011 fires and lasting until the denial of coverage demonstrates waiver of strict compliance

20   with the Warranty.

21        As noted above, "[i]t is settled law that a waiver exists whenever an insurer intentionally

22   relinquishes its right to rely on the limitations provision." *Velasquez v. Truck Ins. Exchange*, 1

23   Cal. App.4th 712, 722 (1991). The relinquishment must be intentional and it may be shown

24   "when a party's acts are so inconsistent with an intent to enforce the right as to induce a

25   reasonable belief that such right has been relinquished." *Waller* 11 Cal.4th at 33.

26              **c.    Conclusion**

27        Although plaintiff has provided substantial evidence that Nationwide failed to require

28   strict compliance with COPC420 endorsement warranties, the Court does not find that

1   defendant, as a matter of law, waived its right to require strict compliance with the Storage

2   Distance Warranties. The trier of fact will make credibility determinations and weigh the

3   evidence. Accordingly, plaintiff's motion for partial summary judgment based on defendant's

4   waiver of compliance will be denied.

5   **3.    Increased Hazard Exclusion**

6           Nationwide provided as an additional basis for its coverage denial of the 3/24 fire, the

7   Increased Hazard exclusion. The Policy includes Form COP-100 which sets out Perils Excluded:

8           1.      "We" do not pay for loss if one or more of the following exclusions apply
                    to the loss, regardless of other causes or events that contribute to or
9                   aggravate the loss, whether such causes or events act to produce the loss
                    before, at the same time as, or after the excluded causes or events.
10                  . . .
                    i.      Increased Hazard – "We" do not pay for loss occurring while the
11                          hazard has been materially increased by any means within "your"
                            knowledge or "your" control.

12

13   (JE 3-178.)

14          "[I]n the absence of fraud or concealment, the hazard in respect to the risk assumed

15   cannot be enhanced or enlarged by a mere continuation of the conditions and uses existing at the

16   time the policy was issued. *Rossini*, 182 Cal. at 424.

17          Plaintiff contends that Nationwide has not met its burden to prove that All Star increased

18   a hazard after the policy issued. Defendant argues that there are facts in dispute.

19          The Court concludes that a factual issue exists concerning whether plaintiff materially

20   increased a hazard within its control.  Accordingly, plaintiff's motion for partial summary

21   judgment based on plaintiff's alleged breach of the increased risk exclusion will be denied.

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

12cv146

1    ///

2    **G.    Defendant's Motion to Strike New Arguments and Evidence in Reply Brief**[5]

3         Nationwide contends that plaintiff included new arguments and evidence in its reply brief

4    in connection with plaintiff's motion for summary judgment. Alternatively, defendant seeks

5    leave to file a sur-reply to address the allegedly new arguments and evidence. The Court finds

6    defendant's motion without merit.

7         **1.    "New Arguments" in All Star's Reply Brief**

8         Defendant contends All Star raised three new arguments in its reply brief that it failed to

9    raise in its moving papers and which defendant states were never raised in this litigation at all:

10        – Kirk Stewart of Smith Kandal Agency never acted on All Star's behalf as its own agent;

11        – California Insurance Code § 1731 requires a determination that Stewart could not have

12   been acting on All Star's behalf as its agent because Smith Kandal may have obtained a broker-

13   agent appointment from Nationwide for property insurance coverage in September of 2000; and

14        –  the insurance contract at issue in this case is not an integrated agreement.

15        The assertion that new arguments in a reply brief that were not presented in the moving

16   papers is only partially accurate. The cases defendant relies upon concerned arguments that were

17   neither raised in the moving papers nor in the opposition papers. In such a situation, courts will

18   not ordinarily consider matters that were raised for the first time in the reply memorandum.

19   However, arguments not made in an moving brief but made in response to matters that were

20   raised in the opposition to the motion are appropriately considered. *See e.g., Koerner v. Grigas,*

21   328 F.3d 1039, 1048-49 (9th Cir. 2003) ("[w]e have discretion to review an issue not raised by

22   [movant] . . . when it is raised in the [movant's] brief."); *see also, Paul v. Colvin,*  2013 WL

23   5797427 *5-6 (S.D. Cal. 2013).

24        Here, defendant's present motion and its objection to plaintiff's arguments and evidence

25   in its reply brief [doc. #94] have clearly been more than adequate to respond to plaintiff's

26   

27        [5]     On September 16, 2013, defendant filed an objection to new arguments and
     evidence allegedly introduced in plaintiff's amended reply brief. *See* Docket No. 94. The
28   objection is duplicative of its motion to strike. For the reasons set forth above that address
     defendant's motion to strike, defendant's objections are overruled.

1   arguments that defendant raised in its opposition motion. No surreply is necessary.

2         **2.**     **"New Evidence" Filed in Support of All Star's Reply Brief**

3       Defendant's motion to strike "new evidence" is similarly without merit.

4       In *Carrillo v. Schneider Logistics, Inc.*, 2013 WL 140214 *3, n.2 (C.D. Cal. 2013),

5   Walmart objected to a document because it was introduced for the first time in plaintiffs' reply

6   brief. The Court noted that "[s]ince this document was submitted in response to Walmart's

7   argument . . . , it is properly raised in a reply brief." Additionally, the Court noted that Walmart's

8   objection was "effectively a sur-reply brief," and therefore Walmart could not "reasonably

9   complain that it has been deprived of a chance to respond to this document."

10       Here, the evidence plaintiff presents attached to its Reply memorandum was introduced in

11   response to arguments raised in defendant's opposition to plaintiff's motion for summary

12   judgment. With its objections to the evidence and the present motion, defendant has amply

13   argued its position concerning the "new evidence" and therefore, there is no need for a sur-reply.

14         **3.**     **Filing of an Amended Reply**

15       All Star filed its amended reply brief to correct a single citation error because notices of

16   errata are not accepted in this district. Defendant contends the amended reply brief was

17   substantively different than the original reply brief. The Court finds that the amendment was not

18   materially different and therefore, the filing of the amended reply was appropriate.

19         **4.**     **Objections**

20       In its reply to its motion to strike, Nationwide supports its use of objections to virtually

21   every item of evidence All Star filed with its motion for summary judgment or in its opposition

22   to Nationwide's motion for summary judgment by contending its was "obligated to file timely

23   evidentiary objections to its opponent's evidence." Reply at 3. Defendant attempts to deflect

24   blame for its multitude of objections by stating it is "certainly not Nationwide's fault that nearly

25   every item of evidence All Star filed with its MSJ or with its Opposition to Nationwide's MSJ is

26   inadmissible for at least one reason or another." *Id.*

27       Nationwide has taken the concept of evidentiary objections to an extreme level which has

28   caused the Court to devote unnecessary time to minor, superficial and excessive objections in the

1    context of summary judgment motions. The Court is mindful of the need to consider the quality

2    of evidence presented in support of or opposition to a summary judgment motion, the sheer mass

3    of superfluous objections filed by defendant in this case has burdened the Court and opposing

4    counsel unnecessarily and excessively.

5          The Court has thoroughly reviewed and considered the voluminous record, including all

6    evidence, arguments, points and authorities, declarations, testimony, objections and other papers

7    filed by the parties. Further, the Court has considered and applied the evidence it deemed

8    admissible, material and appropriate for summary judgment. Objections such as lack of

9    foundation, speculation, hearsay and relevance are duplicative of the summary judgment

10   standard itself. *See Burch v. Regents of the Univ. of Cal.*, 433 F. Supp.2d 1110, 1119–20 (E.D.

11   Cal. 2006). A court can award summary judgment only when there is no genuine dispute of

12   material fact. "Statements based on improper legal conclusions or without personal knowledge

13   are not facts and can be considered as arguments, not as facts, on summary judgment. Instead of

14   challenging the admissibility of this evidence, lawyers should challenge its sufficiency." *Rose v.

15   J.P. Morgan Chase, N.A.,* 2014 WL 546584, *3 (E.D. Cal. 2014.)

16         Given the parties', particularly defendant's, voluminous, superfluous and repetitive

17   objections, the Court will not devote its limited resources to ruling on or otherwise addressing

18   each of the objections. Objections based on lack of foundation, speculation, hearsay and

19   relevance are overruled. Defendant also objects to excerpts of deposition transcripts attached as

20   exhibits to the declaration of plaintiff's counsel, raising the issues of authenticity and lack of

21   foundation because the exhibits do not include the Court Reporter Certificate. Ordinarily, the

22   parties will agree to the introduction of transcripts unless there is specific reason not to do so.

23   Here, defendant does not actually challenge the authenticity of the deposition transcripts. But

24   instead of cooperating with opposing counsel, defendant files yet another objection resulting in

25   more unnecessary briefing. The Court finds the deposition transcripts to be sufficiently

26   authenticated, therefore, the court will overrule this objections as moot.

27         Further, the propriety of Nationwide's filing of a separate 58-page document of

28   objections to **arguments** found in All Star memoranda of points and authorities is unsupported

12cv146

by any legal citation and the Court is unaware of such a practice. Indeed, the purpose of a response or reply memorandum is to challenge the arguments of counsel found in a memorandum. Defendant appears to believe that if its ability to address an argument does not fit within the page limits of a response or reply brief, it should be allowed to bypass the page limitations with separately filed "objections" that argue or reargue facts as well as points of law. It may not do so. As a result of this unprecedented, unreasonable, and inappropriate approach to briefing, the Court will strike defendant's objections to statements in plaintiff's memorandum of points and authorities. [doc. #79-7]

**H.      CONCLUSION**

For the reasons set forth above, **IT IS ORDERED:**

1.      Defendant's motion for summary judgment is **DENIED**;

2.      Plaintiff's motion for partial summary judgment is **DENIED**;

3.      Defendant's motion to strike new argument and evidence is **DENIED**;

4.      Defendant's objections to statements in plaintiff's memorandum of points and authorities will be **STRICKEN** from the record. [doc. #79-7].

5.      Counsel and parties who have settlement authority shall appear before Magistrate Judge Barbara L. Major on **April 21, 2014 at 1:30 p.m.** for a Settlement Conference.

6.      The parties Pretrial Disclosures shall be filed on or before **May 1, 2014**; the parties shall meet and confer no later than **May 9, 2014** to begin the preparation of the proposed Pretrial Order; the proposed Pretrial Order shall be delivered to chambers and efiled to the Court's address: efile_lorenz@casd.uscourts.gov on or before **May 23, 2014.**

7.      The Final Pretrial Conference before the undersigned will be held on **June 9, 2014** at 11:00 a.m. in Courtroom 5B.

**IT IS SO ORDERED.**

DATED: March 30, 2014

M. James Lorenz
United States District Court Judge

/ / /

1 | COPY TO:

2 | HON. BARBARA L. MAJOR
UNITED STATES MAGISTRATE JUDGE

3 |

4 | ALL PARTIES/COUNSEL

12cv146